**Walter SOWIZRAL, Appellant,**

v.

**Mrs. Adele M. HUGHES.**

**No. 14634.**

United States Court of Appeals Third Circuit.

Argued Jan. 22, 1964.

Decided June 19, 1964.

Richard B. Wickersham, Harrisburg, Pa. (F. Brewster Wickersham, Metzger, Wickersham & Knauss, Harrisburg, Pa., on the brief), for appellant.

Huette F. Dowling, Harrisburg, Pa. (John C. Dowling, Dowling & Dowling, Harrisburg, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and FORMAN and GANEY, Circuit Judges.

FORMAN, Circuit Judge.

Plaintiff Walter Sowizral (hereafter appellant), a citizen of Canada, has appealed the verdict of a jury in his negligence suit that favored defendant Adele M. Hughes (hereafter appellee), a citizen of Pennsylvania.[1] The essence of his complaint alleged that while sitting in a non-moving automobile, he suffered injuries as a result of being struck by an automobile negligently operated by appellee. She answered denying negligence. At the trial a jury returned a verdict favoring appellee. The United States District Court for the Middle Dis-

1. Jurisdiction is properly founded on the diversity statute, 28 U.S.C. § 1332(a) (2) (1958).

trict of Pennsylvania, in an unreported memorandum, refused a motion for new trial.

The gist of appellant's argument here is that the charge of the District Court was fundamentally incorrect. Appellee asserts that not only was the charge correct, but that appellant made no specific objections at the time of trial to the points he now raises.

"The testimony in this case," the District Court stated in its memorandum on the motion for a new trial, "presented a mass of conflict, much more than occurs in the ordinary case." After resolving all reasonable inferences from the evidence most strongly against the appellant, as required at this stage,[2] the pertinent facts are as follows:

Appellant and his wife had decided to drive in his automobile from their home in Toronto, Canada to Florida for a vacation. They were to be accompanied by their friends, Walter Wells and his wife, also of Toronto. Accordingly, on February 12, 1959, the parties left Toronto in appellant's car driven by him. They proceeded on that day as far as Duncannon, Pennsylvania, where they put up for the night at a motel.

The journey was resumed early the following morning, February 13, 1959. Between 5 and 6 a. m., they were already traveling south on Route 15. Because of the darkness, rain, cold and the fear "that it would start to freeze", appellant drove at about 15 to 20 miles an hour. No ice, according to witnesses for appellant was on the road.

In discussing at that time the existing traveling conditions, those in appellant's automobile expressed the thought that daylight might bring better visibility and weather. Furthermore, appellant testified that he had not felt "like driving in that weather so early in the morning." Appellant turned the car around to face north and parked on the eastern shoulder of the highway, off of the traveled highway. He wanted the members of the group to make up their minds whether to go back to the motel from where they had departed that morning or proceed to Florida.

Meanwhile, at about 4:50 a. m. of the same day, appellee, at her home in Duncannon, received a telephone call from her husband requesting that she pick him up at the railroad station in Harrisburg, Pennsylvania, which was about 15 miles distant. Appellee left soon after the call.

It was damp, cold, and dark, as she left her home. After stepping back and forth on the pavement to ascertain if there were freezing conditions, she decided there were none.

Adjacent to the home of appellee is a hill which presents difficulties for drivers. Thus, appellee testified, because it was cold and raining she applied her brakes while driving her car down the hill to see if there were a sliding condition. According to her testimony, she tested the road surface for ice three more times before the accident without discovering any.

As appellee approached the scene of the accident on Route 15, about six miles from her home, she was traveling 35 miles per hour. There was no one on the roadway, but it was very wet and raining, she stated. In addition, the lights of her car were on as it was still dark at this time in the early morning.

Appellee testified that as she proceeded on Route 15, "I felt a movement in the back of the car." Her first reaction was to decelerate. The car, however, slid toward the west or mountain side of the highway. Yet, the car came out of the skid without hitting the mountain.

Appellee then observed on her side of the road the rear end of a truck "backed into the mountain" with the front over "half of the road." The parked car of the appellant on the other side of the road was also observable.

Her car then immediately went into another skid and crossed over the center

2. See Waggaman v. General Finance Co. of Philadelphia, Pa., 116 F.2d 254, 257 (3 Cir. 1940).

line of the highway toward the east or river side. It thereupon entered upon the eastern shoulder and struck appellant's motionless automobile. Appellant testified that his car's motor was running, its headlights were on, and it had been on the shoulder for only two or three minutes prior to the accident.

Before appellee could stop her car, it had gone southwardly on the wrong side of the highway about "12, 15 feet" or "100 to 150 feet" past the car of the appellant, according to different parts of appellee's testimony.[3] Since appellee was unhurt and on the wrong side of the highway, she drove in low gear over to the west side and parked there.

Appellee testified that after pausing for a minute to compose herself, she saw two men appear—appellant and Mr. Wells. The testimony of Mr. Wells indicated that only he went back to the car of appellee, while the appellant remained seated in his car.

Appellee further testified:

"A. They had walked up the highway. They were very courteous and kind and said—I started to get out of the car; as I opened the door —'Lady, be careful. This is like a sheet of glass', and as I stepped out they took my hand, and I said 'So right you are.'"

The parties thereafter exchanged identifications and walked to the car of appellant. Appellee then invited both couples to her home, which they accepted. A truck drove slowly by the scene of the accident before the five people left for the home of appellee. Appellee asked the truck driver to "tell the police and the highway to cinder the road."

Appellee led the way in her car and appellant's car followed. She testified that appellant, himself, parked his car in her driveway.

Appellant testified his first recollection after the accident was being in the house. Appellee stated that at her home she was concerned and wanted to see them relaxed. Moreover, according to appellee, appellant and his party assured her that they had no need for a doctor.

The daughter of appellee served as hostess, while appellee notified the police by telephone of the accident, and had them verify that the road had been cindered. Subsequently, appellee drove to the station to pick up her husband. They returned home where they conversed with appellant and his wife, and Mr. and Mrs. Wells.

The husband of appellee stated that the condition of appellant seemed normal. But he told appellant and his wife and Mr. and Mrs. Wells that "in order to protect both parties involved" they should have a doctor examine them.

Appellant and his group then followed appellee to a garage about one mile and a quarter from the house. Appellee testified that "[t]o the best of my knowledge Mr. Sowizral got into the car and drove [to the garage]." The garage workers repaired the car that afternoon.

The garageman stated that fresh damage to the car of appellant appeared on the left front and back door. He estimated that it amounted to about $300, and damage of about $120 or $130 to the car of appellee.

3. On direct examination by the attorney of Mr. Sowizral, Mrs. Hughes testified:
"Q. What happened after you struck the Sowizral car?
"A. As I said, my momentum striking the car stopped my momentum after possibly going 12, 15 feet. I was stopped on the wrong side of the road. I was on the left hand, on the river side of the road, on the east side of this highway. I was afraid of other cars coming. I went into low gear and had quite a time spinning with my rear wheels trying to move the car over to the bank or mountain—the side of the mountain, rather."
On cross-examination by her attorney the following ensued:
"Q. How far did you stop beyond the point of impact?
"A. This truck that I had just passed, just about passed, I would say possibly 100 to 150 feet that I drove from the impact around—had skidded around this truck. Then I went a number of feet more past the truck and parked."

Appellee, while the car of appellant was being repaired, took appellant to the office of a Doctor Karlick. It appeared that he permitted appellant and his party to continue driving on to Florida, which they did that same day, February 13, 1959.

The witnesses for appellant stated that being in a state of shock, appellant did no more driving. Appellant testified that during the remainder of the trip, he found eating difficult owing to the trembling of his right hand.

On February 16, 1959, the group arrived in Miami, Florida. There was testimony by witnesses for appellant that on the third day after the accident, he developed acute diarrhea, a slur in his speech, clumsiness in his right arm, and a sense of numbness in his right leg, right side of his tongue, and right side of his face. On the fifth day after the collision, appellant, according to testimony in his behalf, suffered a cerebrovascular accident, commonly known as a stroke. During approximately the next two weeks, he stayed in bed under the care of a physician. After spending sixteen days in Florida, the group returned by car to Toronto.

The doctor testifying for appellant stated that the accident was a causative factor in the stroke. Contrariwise, the doctor testifying for appellee stated that there was no connection between the accident and any injury to appellant.

## I

Appellant contends that the charge [4] of the Trial Judge was prejudicial when it placed "upon the plaintiff [appellant] the burden of proving the defendant's [appellee's] negligence by a fair preponderance of the evidence." The District Court, reasons appellant, should have fashioned its charge differently "in light of the presumption of negligence of the defendant [appellee] who had crossed the highway and struck the plaintiff's [appellant's] automobile on the wrong side of the road."

■ The burden of proof of the defendant's negligence—in the sense of being the burden of persuasion—is everywhere on the plaintiff, since he is asking the court for relief.[5] The plaintiff must persuade the jury that a preponderance of the evidence is in his favor.[6]

■ Presumptions are rules of law requiring the assumption of one fact upon proof of another in the absence of satisfactory evidence.[7] As stated by Prosser:

"They place upon the adverse party the burden of offering further evidence in the sense that a verdict will be directed against him if he does not, but they do not affect the ultimate burden of proof, as to the preponderance of the evidence required." [8]

■ In the instant case appellee concedes that her car crossed the wrong side of the highway and struck the car of appellant. Under these facts and circumstances, it is undisputed that the appellant established a presumption of negligence on the part of the appellee.[9]

---

4. The charge was as follows:
"Before the plaintiff is entitled to a verdict at your hands, he must prove to you by a fair preponderance of the testimony that there was negligence on the part of the defendant, and that such negligence was a contributing proximate cause of the accident, and that of course eliminates any possibility of a verdict based upon mere guess or conjecture."

5. Prosser on Torts, § 41, at 197 (2nd ed. 1955); cf. McCormick on Evidence, §§ 306–07 (1954), where Professor McCormick states that the "burden of proof" has two meanings: the burden of producing evidence and the burden of persuasion. The former may shift to the adversary when the pleader has discharged his initial duty. Ibid. The latter will ordinarily remain at the close of the evidence with the pleader. Id. at § 307.

6. Prosser on Torts, supra note 5; see notes 9–11, infra.

7. Prosser on Torts, supra note 5.

8. Id. at 198.

9. See Campbell v. Fiorot, 411 Pa. 157, 162–63, 191 A.2d 657, 659–60 (1963).

■ This presumption, however, did not shift appellant's [plaintiff's] burden of persuading the jury that a preponderance of the evidence was in his favor. Rather, as the Pennsylvania Supreme Court stated in MacDonald, Admrx., Aplnt., v. P. R. Co.:[10]

"This presumption cast upon the defendant, if it wished to forestall a verdict in plaintiffs' favor, the burden of producing evidence to neutralize the inference which the jury in the absence of countervailing evidence would draw legitimately from the evidence produced by the plaintiff." [11]

■ Accordingly, the trial judge correctly charged the jury that the plaintiff [appellant] had the burden of proving defendant's [appellee's] negligence by a fair preponderance of the evidence. Appellant's attack thereon, consequently, lacks merit.

Appellant contends that certain portions of the charge created confusion in the minds of the jury whether or not there was a presumption that appellee was negligent.

In the course of his charge, the Trial Judge stated:

"In connection with the discussion of negligence, I caution that the mere happening of an accident does not as a matter of law constitute negligence on the part of anyone. The occurrence of such an accident does not raise the presumption that the defendant was negligent. * * * "

"Under the law applicable in this case, the presence of an automobile on the wrong side of the highway, is prima facie evidence of the driver's negligence. * * * "

"In a case like this, negligence is never presumed from the mere happening of the event. He who alleges it must affirmatively prove it or point to such circumstances as naturally and reasonably lead to the conclusion of carelessness on the part of the accused as the proximate cause of the occurrence which resulted in the injuries complained of. * * * "

It is arguable that the above mentioned language in the charge created the impression that facts and circumstances of the case gave rise to a presumption. For example, the statement "[A]n automobile on the wrong side of the highway, is prima facie evidence of the driver's negligence.", could have been so interpreted.

But, it is also arguable that the charge created the impression that the facts and circumstances of the case did not give rise to a presumption of negligence. For example, the statement "In a case like this, negligence is never presumed from the mere happening of the event.", could have been so interpreted.

Examination of the record reveals, however, that the only objection counsel for appellant made to this or any other part of the charge by the Trial Court was at the end of the Judge's consideration of appellant's points for charge. At that time, counsel said: "General exception."

■ Appellant never made a specific objection. Rule 51 of the Federal Rules of Civil Procedure requires such an objection to be made, if a party wishes to assign as error the giving or failing to give a certain instruction.[12]

10. 348 Pa. 558, 36 A.2d 492 (1944). In the MacDonald decision, the plaintiff proved that the derailment of defendant's train killed her son while he was its passenger. Id. at 566–67, 36 A.2d at 496–97. Thus, she met the initial burden of proof in that a presumption arose that the death of her son resulted from the plaintiff's negligence.

11. Id. 348 Pa. at 567, 36 A.2d at 493; also, see id. at 560, 36 A.2d at 496, where

the Pennsylvania Supreme Court stated:
"The plaintiff made out a prima facie case by proving that the child was killed while a passenger in the defendant's wrecked railroad car. The burden of either coming forward with defensive evidence of a convincing character or suffering an adverse verdict then shifted to the defendant."

12. Fed.R.Civ.P. 51 proclaims:
"At the close of the evidence or at such

Moreover, after completing his charge, the Trial Court approved and read to the jury, with a slight modification, appellant's point number 1 for charge. The Judge stated:

"Since the evidence discloses that the defendant, Adele M. Hughes, was operating her automobile over on the eastern side of the center line of Route 15, or on the wrong side of the road for the direction in which Adele M. Hughes was travelling, insofar as the plaintiff Walter Sowizral was concerned, *this would be prima facie evidence of negligence on the part of defendant, Adele Hughes*, and if you find that this was the proximate cause of her collision with Walter Sowizral's vehicle, then the defendant Adele Hughes would be liable for the resulting injuries to Walter Sowizral, unless she would 'prove to your satisfaction' that her being on the wrong side of the highway was the result of some act for which she

was not legally responsible." (Emphasis added.)

The insertion of the phrase "this would be prima facie evidence of negligence on the part of the defendant Adele Hughes" should have obviated any existing confusion whether or not a presumption of negligence existed. In any event, the charge of the Trial Court on this point did not bring about such a gross miscarriage of justice, for which the appellate court may grant a new trial absent the appellant's failure to make a timely and proper objection.[13]

Appellant contends: "[T]here is not one single iota of evidence as to an icy condition on the road which caused her [appellee] to skid." Hence, the Trial Judge erred, he argues, when he charged the jury to consider whether a sudden emergency occurred which might excuse acts of appellee, otherwise constituting negligence.[14] He concedes that the statement of law thereon by the Trial Judge "is correct."

---

earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. *No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.* Opportunity shall be given to make the objection out of the hearing of the jury." (Emphasis added.)

13. McNello v. John B. Kelly, Inc., 283 F. 2d 96, 102 (3 Cir. 1960) ; 5 Moore's Federal Practice § 51.04, at 2503–04 (2d ed. 1951) states:

"In the absence of objection thereto, the court's instructions to the jury are not reviewable, although the appellate court may in its discretion consider grounds of error in spite of a failure to object below when it is apparent on the face of the record that a miscarriage of justice may occur."

14. The pertinent part of the charge dealing with this topic stated:

"Now, the defendant contends that there was a sudden emergency. The rule is that 'in the face of a sudden emergency not caused or contributed by any prior fault on her part, one who attempts to extricate herself or to avoid injury is not held to a calm, deliberate judgment, nor is she negligent because her conduct does not measure up to that of a reasonably prudent man in the exercise of ordinary care at a time when no danger or imminent peril threatens.' The existence of an emergency, which would excuse acts which might otherwise constitute negligence, is a question for you. Also the question of whether one confronted with an emergency exercises due care, or the care of an ordinarily prudent person similarly imperiled, is for you to determine.

"The meat of that whole paragraph is in the second sentence: The rule is that in the face of sudden emergency not caused or contributed to by any prior fault on the part of the driver. If the sudden emergency is created by the driver, then obviously the driver cannot profit from it. However, an emergency can be created which could of course work to the benefit of the driver."

If a sudden emergency, such as an isolated *icy spot*,[15] confronts an individual, he may be unable to reflect carefully on the course of action to be taken. It, consequently, would be unfair to make him adhere to the same standard of conduct as one who had had an opportunity to reflect. As stated by the Supreme Court of Pennsylvania:

"[N]egligence may not be implied because of failure to perform a duty so suddenly and unexpectedly arising that there was no opportunity to apprehend the situation and to act according to the exigency. * * * *"[16]

The appellee testified that when Mr. Wells came to her car after the accident, he said: "Lady, be careful. This is like a sheet of glass." Appellee also testified about her second trip to pick up her husband in Harrisburg in the following manner: "I knew there was ice on the east road, so evidently I went over on the west. I mean, I knew there was ice on the west side of the river road." In addition, other parts of the testimony alluded to the icy condition of the road where the accident occurred.

Even though the witnesses for appellant expressly deny that there was *ice on the road*, it was within the province of the jury to accept appellee's testimony. It could have reasonably inferred therefrom that an icy condition on the road caused the skid. Accordingly, the reason *appellant offers, for concluding that the Trial Judge incorrectly charged the jury on sudden emergency, is baseless.*

There does exist, nevertheless, a possible reason for holding that the submission of the sudden emergency issue to the jury was prejudicial error, if an appropriate objection had been made.

An individual must anticipate some emergencies and must be prepared to meet them, when engaging in an activity in which they are likely to arise.[17] Indeed, the driver on the highway must make some preparation to meet a host of vicissitudes which include many that are not specifically foreseeable.[18] On the rainy, cold, early morning February day of this accident, such a vicissitude may have been any icy spot on the road. Yet, appellant neither addressed the above argument to the Trial Court, nor any objection against the submission of the sudden emergency issue to the jury. In fact, appellant has failed to advance this argument on appeal.

Rule 51 of the Federal Rules of Civil Procedure[19] does not require strict formality in the manner or mode in which the party objects to an alleged error in a charge.[20] But it does require that the party make his position clear so that he informs the trial judge of possible error.[21] Only by so doing this does the party afford the court opportunity of correcting any possible error. A general objection, such as is found herein, and where at least part of the charge is correct, is insufficient.[22]

Only in rare instances, wherein a fundamental error in the charge occasions a gross miscarriage of justice, will

15. In the unreported memorandum refusing the motion for a new trial, the Trial Judge stated:
"There was ample evidence that defendant did encounter a sudden emergency, i. e., an isolated icy spot on the highway which caused the skid and placed the defendant's car on the wrong side of the road resulting in the collision with plaintiff's car. Certainly whether under all of the facts and circumstances as developed by the testimony this constituted negligence was a matter for the jury to determine."

16. Polonofsky v. Dobrosky, 313 Pa. 73, 76, 169 A. 93, 94 (1933), cited with approval in Liuzzo v. McKay, 396 Pa. 183, 186–87, 152 A.2d 265, 267–68 (1959).

17. Prosser, supra note 5, § 32, at 138.

18. 2 Harper and James, The Law of Torts, § 16.12, at 940 (1956).

19. Supra note 12.

20. See 5 Moore's Federal Practice, supra note 13, at 2505.

21. Ibid.

22. Palmer v. Hoffman, 318 U.S. 109, 119, 63 S.Ct. 477, 483, 87 L.Ed. 645, 652 (1943).

the appellate court in the utilization of its discretion overlook the absence of an appropriate objection.[23] One commentator expresses the view:

"If there is to be a plain error exception to Rule 51 at all, it should be confined to the exceptional case where the error has seriously affected the fairness, integrity, or public reputation of judicial proceedings." [24]

In charging on sudden emergency, the Trial Judge never told the jury, explictly or implicitly, that a sudden emergency existed in the present case. Rather, he charged the jury explicitly that the existence of an emergency was a question for it to decide.[25]

Additionally, the Trial Judge accepted for charge appellant's point No. 3, which undoubtedly aided in making clear that certain emergencies are not sudden and unexpected. It read:

"It is rule that the driver of a vehicle must at all times have her vehicle under control, and having one's car under control means that the operator must take into account the condition of the highway, that is, whether it is dry, wet, slippery, and so be able to control his vehicle as to be able to stop it before doing injury to any person in any situation that may reasonably arise."

Appellant has failed to offer any convincing reason for concluding that the Trial Judge made a mistake in charging the issue of sudden emergency to the jury. He made no objection of any kind at trial to the jury's consideration of this issue. The sudden emergency charge of the Trial Judge instructed the jury to reflect whether it should apply this doctrine of the law. Clearly, the jury had knowledge by way of instruction that certain road emergencies are not sudden but expected. And the Trial Judge approved for charge appellant's request pertaining to the appellee's control of her car and the necessity of her taking into account such conditions as wet and slippery roads.

Under these facts and circumstances, we are unable to rule that submitting the issue of sudden emergency to the jury was a gross miscarriage of justice.

Thus, we conclude that the appellant's attack upon the charge of the District Court must fail. Other contentions raised by the appellant are equally devoid of merit. The judgment of the District Court will be affirmed.

23. McNello v. John B. Kelly, Inc., supra note 13.

24. 2B Barron & Holtzoff, Wright, Federal Practice and Procedure, § 1106, at 475 (1961).

25. See note 14 supra for that section of the charge which deals with sudden emergency.