Johnny JOHNSTON

v.

Edward B. BAKER.

Appeal of Albert B. POE, in No. 18,553.

Appeal of ISLAND HOTELS, LTD., a corporation, in No. 18,554.

Nos. 18553, 18554.

United States Court of Appeals, Third Circuit.

Argued Jan. 29, 1971.

Decided July 20, 1971.

Roger L. Campbell, Charlotte Amalie, St. Thomas, V. I., for appellants.

Thomas D. Ireland, Charlotte Amalie, St. Thomas, V. I., for appellee.

Before KALODNER, FREEDMAN* and ADAMS, Circuit Judges.

OPINION OF THE COURT

ADAMS, Circuit Judge.

This is an action brought in the District Court of the Virgin Islands by

---

\* Judge Freedman sat on the panel in this case, but died before the writing of this opinion.

Johnny Johnston against Edward B. Baker, Albert B. Poe, and Island Hotels, Ltd. The complaint charged Baker with false arrest and malicious prosecution and also alleged that Baker, Poe and Island Hotels, Ltd. conspired to injure, embarrass, harass and hinder the plaintiff in the conduct of the restaurant and bar business which he was operating in the Yacht Haven Hotel, St. Thomas. Poe and Island Hotels answered and denied the charges; Island Hotels filed a counterclaim against Johnston for $5,-851.07, for amounts claimed by Island Hotels for rental. Before trial, the Court granted a motion to dismiss, without prejudice, Baker as a party defendant, leaving only the conspiracy charges for adjudication by the jury.

At the times in question, Poe was both president of the corporation which owned the hotel, and general manager of the hotel. In May, 1966, Johnston, a professional entertainer who had been in the restaurant and bar business previously, negotiated with Poe for the right to operate the restaurant and bar. In June, 1966, they entered into a preliminary agreement which was signed by both parties. Subsequently, Johnston and Poe retained Harry Dreis, Esquire, to draft a formal lease agreement for them. After Mr. Dreis submitted the lease, Johnston made two principal requests: that the lease include an option to permit Johnston to extend its term, and that the rental be based on a uniform percentage of the aggregate income from the sale of both food and beverages rather than on a given percentage for the food and a different percentage for the beverages. The parties then waited for a corrected lease to be prepared by Mr. Dreis. In the meantime, Johnston proceeded with the operation and for all practical purposes put into effect the understanding that had been reached by the parties, at least so far as the rental was concerned. After three or four weeks, the business began to develop and Johnston succeeded in attracting local trade. He conducted dances for the younger persons in the communi-

ty, wedding receptions, and other social functions. On the basis of this experience, Johnston projected a very profitable winter season.

At about this time, Baker, who had been residing on a boat moored at Yacht Haven, began working with Poe and the hotel as a "non-salaried employee." Beginning in September, 1966, Poe and Baker, together with Miss Ann-Britt Holmes, the fiancee of Baker, and Elizabeth Smith, who had a lease on a portion of the hotel property for the sale of liquor and boutique items, initiated a campaign of harassment against Johnston. The hotel did not pay plaintiff monies due him, and took other steps to cause plaintiff financial difficulty. The individuals blocked the entrance to the restaurant with an automobile, shut off the restaurant's electricity, obstructed the water drain, advised hotel guests that the restaurant was closed when in fact it was open, refused the services of an electrician and plumber, and filed six criminal complaints against Johnston.

As a result of the criminal accusations, Johnston was arrested, held in jail temporarily until bond could be posted, and subsequently cleared on five of the six charges brought against him. On the sixth charge, he was convicted of loud and boisterous conduct against Poe, and fined $25.

Eventually, on December 19, 1966, Johnston left the premises, and four days later Baker began operating the business.

The jury rendered a verdict for Johnston of $20,000 compensatory damages and $15,000 punitive damages, and judgment was entered for the plaintiff on the counterclaim. The District Court denied the defendants' motion for a directed verdict and for judgment n.o.v., and defendants appealed.

■ The defendants' first contention is that a corporation may not be guilty of a conspiracy with its officers and agents when they are acting solely for the corporation and not for their own purposes. The conspiracy claimed by

Johnston, however, consisted of acts done by the corporation, Poe, Baker, Ann-Britt Holmes and Elizabeth Smith. Poe and Miss Holmes were paid employees of the corporation, Baker was an "unpaid employee," and Miss Smith was not an employee but a lessee of the liquor shop and boutique. In addition, there was testimony indicating that Poe and Ann-Britt Holmes acted as a result of personal motives.

In support of their position, defendants cite Maddox Motor Co. v. Ford Motor Co., 202 F.Supp. 103 (W.D.Tex., 1960), and Nelson Radio and Supply Co., Inc. v. Motorola, Inc., 200 F.2d 911 (5th Cir. 1952), cert. denied, 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953), which support the position that "[i]t is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself anymore than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." 200 F.2d at 914. And this court, in Goldlawr, Inc. v. Shubert, 276 F.2d 614 (3rd Cir., 1960) approved in dicta this holding.

We are aware that common ownership or control of corporations does not insulate them from the antitrust laws. *See e.g.,* Timkin Roller Bearing Co. v. United States, 341 U.S. 593, 71 S.Ct. 971, 95 L.Ed. 1199 (1950); Kiefer-Stewart Co. v. Seagram & Sons, 340 U.S. 211, 71 S. Ct. 259, 95 L.Ed. 219 (1950); United States v. Yellow Cab Co., 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010 (1947). In *Yellow Cab,* a conspiracy was found between several corporations and the per-

son who controlled them. The Supreme Court, however, has not yet decided whether a corporation could conspire with its unincorporated division and officers where there was evidence that independent parties conspired with the corporation. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S. Ct. 486, 7 L.Ed.2d 458 (1962).

Similarly, Johnston does not take exception to the principle expressed in *Nelson Radio,* but instead contends that there is evidence to support the finding that Poe and Baker were acting for personal reasons and that at least one of the parties to the conspiracy was not an employee or an agent of the corporation. Since the evidence supports these contentions,[1] this case does not come under the rule set forth in *Maddox* and *Nelson Radio,* and we do not have to pass on the viability of those cases.

Because of the well-established principle that all conflicts of evidence must be resolved in favor of the party for whom the jury decides, the first thesis asserted by the defendants must fall.

Defendants next argue that there could be no conspiracy arising out of attempts by a corporate landlord to regain possession of premises held by a tenant-at-will, and that the court erred in failing to so instruct the jury. We have reviewed the defendants' requests for charge most carefully and find no such request as is indicated by this contention.[2] In any event, there was testimony from which the jury could have found that Johnston was not a tenant-at-will, but was present on the prem-

1. See our statement of the facts, *supra.* Although the evidence was not crystal clear as to Miss Smith's specific relationship to the hotel, there was credible evidence from which the jury could have inferred that she was not an agent or employee. In fact, the witness Ann-Britt Holmes testified that Miss Smith was "not an employee as such. She has a lease on the liquor store."

2. Defendants' brief refers the court to defendants' requests three and four and to page 270 of the transcript. Request for charge No. 3 is "Plaintiff in this action was an employee at will or a tenant at will of the defendant Island Hotels, Ltd." Request for charge No. 4 is "An Employee at will or a tenant at will has no cause of action where his discharge is the result of a conspiracy." Page 270 of the transcript refers only to the contention that a plaintiff may not sue a corporation for conspiring with one of its employees or with more than one of its employees.

ises as a lessee under a lease for a term of two years, in which only two items were left unresolved: *viz.*, the option to renew, and the method of calculating the rent. Finally, the evidence indicates more than a mere attempt to evict Johnston, but also an effort to embarrass, harass, and hinder him in his business and reputation.

■ Defendants assert that it was reversible error for the trial judge to sustain an objection to testimony by Attorney Dreis regarding discussions between Dreis and Johnston in connection with the lease. The defendants take the position on this appeal that such testimony would be relevant to show the nature of the lease. However, the defendants' offer of proof on this point was that Dreis would identify the lease agreement which had previously been marked for identification, would testify as to the changes that had been suggested regarding it, and would testify that it had not been signed. Johnston objected that Dreis could not testify to any oral communications made by Johnston regarding the lease on the ground of the attorney-client privilege, and this objection was sustained. We believe this ruling was erroneous. 5 V.I.C. § 854(2) (e) (1967); 8 J. Wigmore, Evidence § 2312 (1961). However, in this case, the error was harmless since each of the points which the defendant sought to prove through the testimony of Attorney Dreis was ultimately established without contradiction.

■ The final argument by defendants is that it was error for the court to instruct the jury that a verdict by ten of the twelve jurors would be acceptable. Although this is the rule prevailing in the Virgin Islands territorial courts, *see* 5 V.I.C. §§ 358–360 (1967), the Federal Rules of Civil Procedure which are applicable to the District Court, *see* Calistro v. Kean, 389 F.2d 619, 6 V.I. 443 (3d Cir. 1968), provide for a unanimous

jury verdict. The defendants did not affirmatively agree to this instruction to the jury; however, the record is clear that the defendants did not object to it and indeed in no way questioned it.

Rule 51 of the Federal Rules of Civil Procedure provides that no party may assign as error an erroneous instruction unless he has objected thereto. Furthermore, Rule 61 provides, in essence, that courts must not disturb judgments because of error unless failure to act appears to be "inconsistent with substantial justice"; that error must be disregarded if it "does not affect the substantial rights of the parties." The question thus presented is whether the court's charge on this point may be considered "inconsistent with substantial justice," or whether the error must be disregarded because it doesn't affect the "substantial rights of parties."

In Sowizral v. Hughes, 3rd Cir., 333 F.2d 829, this Court stated:

"Only in rare instances, wherein a fundamental error in the charge occasions a gross miscarriage of justice, will the appellate court in the utilization of its discretion overlook the absence of an appropriate objection. One commentator expresses the view:

'If there is to be a plain error exception to Rule 51 at all, it should be confined to the exceptional case where the error has seriously affected the fairness, integrity, or public reputation of judicial proceedings.' " *Id.* at 836–837 (footnotes omitted).

This is not such a case. Where the Federal Rules of Civil Procedure and the statutes of the Virgin Islands permit less than unanimous jury verdicts, where defendants failed to take advantage of their opportunity to object to the charge, and where appellants can merely speculate as to prejudice but cannot in fact demonstrate any, we are unable to conclude that the court's charge was a gross miscarriage of justice.[3]

3. Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930) is

clearly inapposite. First, it was a criminal case involving article III, section 2,

We have reviewed the other alleged errors brought to our attention by the defendants and consider them to be without merit. Accordingly, the judgment of the district court will be affirmed.

clause 3 and the Sixth Amendment of the Constitution. Second, the Supreme Court upheld a trial by less than twelve jurors where the parties so agreed.