**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

Sᴀᴍ Gʟᴀssᴄᴏᴄᴋ III
Vɪᴄᴇ Cʜᴀɴᴄᴇʟʟᴏʀ

Cᴏᴜʀᴛ ᴏғ Cʜᴀɴᴄᴇʀʏ Cᴏᴜʀᴛʜᴏᴜsᴇ
34 Tʜᴇ Cɪʀᴄʟᴇ
Gᴇᴏʀɢᴇᴛᴏᴡɴ, Dᴇʟᴀᴡᴀʀᴇ 19947

Date Submitted: June 5, 2017
Date Decided: September 7, 2017

John L. Reed, Esquire
Ethan H. Townsend, Esquire
DLA Piper LLP
1201 North Market Street, Suite 2100
Wilmington, DE 19801

Richard D. Heins, Esquire
Peter H. Kyle, Esquire
Ashby & Geddes
500 Delaware Avenue
Wilmington, DE 19801

Rudolf Koch, Esquire
J. Scott Pritchard, Esquire
Matthew D. Perri, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

John A. Sensing, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street
Wilmington, DE 19801

Bradley R. Aronstam, Esquire
Nicholas D. Mozal, Esquire
100 S. West Street, Suite 400
Wilmington, DE 19801

Re: *LVI Group Investments, LLC v. NCM Group Holdings, LLC et al.*,
Civil Action No. 12067-VCG

Dear Counsel:

In April of 2014, two demolition firms, LVI Group Investments, LLC ("LVI")

and NCM Group Holdings, LLC ("NCM") combined to form NorthStar Group

Holdings, LLC ("NorthStar"). This suit was filed by LVI in 2016, accusing NCM,

generally speaking, of committing fraud against LVI in the inducement of the

combination of the entities.  Subsequently, NCM made mirror image allegations against LVI via the Counterclaim at issue in this Letter Opinion.

As part of its Counterclaim, NCM attempts to state a claim of fraud against Paul Cutrone, former Chief Financial Officer of LVI.  Cutrone is not a Delaware resident.  He has moved to dismiss this action against him, asserting that this Court lacks personal jurisdiction.  This Letter Opinion deals with that limited issue.  For the following reasons, I find that this Court lacks personal jurisdiction over Cutrone; accordingly, his motion to dismiss is granted.  My rationale follows.

## I. BRIEF BACKGROUND

This matter involves two competing fraud claims between two Delaware LLCs—LVI and NCM—that merged their businesses into a single entity—NorthStar (the "Merger").[1]  The Counterclaim alleges five counts against the various Counterclaim Defendants, including four against Counterclaim Defendant Paul Cutrone and others:  Counts I and II for fraud and fraudulent inducement with respect to LVI's financial statements and certain representations concerning those statements in the "contribution agreement" that governs the parties' respective ownership in NorthStar; and direct and derivative claims in Counts IV and V for breach of fiduciary duties owed to LVI or NorthStar.[2]  Cutrone was a Vice President

---

[1] Interested readers should turn to my previous Letter Opinion in this matter issued on March 29, 2017 for a more in-depth factual recitation.  *See LVI Grp. Investments, LLC v. NCM Grp. Holdings, LLC*, 2017 WL 1174438 (Del. Ch. Mar. 29, 2017).

[2] NCM's Amended Verified Counterclaim Complaint (the "Counterclaim" or "CC.") ¶¶ 71–120.

and the Chief Financial Officer of LVI, as well as the Chief Financial Officer of NorthStar.[3] Cutrone was also the "Vice-President and CFO" of several LVI "subsidiaries (including Delaware subsidiaries) and a member of their boards."[4] He is also alleged to be an owner of LVI.[5] During his tenure as an officer for LVI and NorthStar, Cutrone's offices were in New York, and he has never lived in Delaware.[6] While the Counterclaim fails to allege NCM's principal place of business, the LVI entity that merged with NCM was headquartered in Connecticut.[7]

In a Letter Opinion issued on March 29, 2017, I denied LVI's motion to dismiss with respect to NCM's fraud claims but granted the motion as to NCM's fiduciary duty claims in Counts IV and V.[8] I reserved decision on Cutrone's motion to dismiss for lack of personal jurisdiction under Court of Chancery Rule 12(b)(2).[9] My decision on that issue—personal jurisdiction over Cutrone—follows.

## II. ANALYSIS

In examining a motion to dismiss for lack of personal jurisdiction under Court of Chancery Rule 12(b)(2), I may "rely upon the pleadings, proxy statement, affidavits, and briefs of the parties in order to determine whether the defendants are

---

[3] *Id.* ¶ 8.
[4] *Id.*
[5] *Id.*
[6] Countercl. Defs. State and Cutrone Opening Br. Ex. 2 ("Cutrone Aff.") ¶¶ 2, 11–12.
[7] Countercl. Defs. State and Cutrone Opening Br. Ex. 1 (the "Certificate of Merger").
[8] *LVI Grp. Investments, LLC*, 2017 WL 1174438, at *10.
[9] *Id.*

subject to personal jurisdiction."[10] All reasonable inferences are to be drawn from the record in favor of the plaintiff.[11] This Court applies a two-step analysis when a nonresident defendant moves to dismiss under Rule 12(b)(2).[12] First, I must determine if there is a statutory basis for personal jurisdiction; if there is, then I must determine whether exercising personal jurisdiction violates the Due Process Clause of the Fourteenth Amendment.[13] The party seeking to establish personal jurisdiction bears the burden of establishing these two requirements.[14] Thus, NCM must "point to sufficient evidence in the record to support a *prima facie* case that jurisdictional facts exist to support the two elements it must prove" with respect to Cutrone.[15] NCM advances three grounds to establish personal jurisdiction: (1) Section 18-109, (2) a conspiracy theory, and (3) Section 3104(c). I address each in turn below.

*A. Section 18-109*

NCM first argues that Section 18-109 of the Delaware Limited Liability Company Act provides personal jurisdiction over Cutrone "because Cutrone, while a manager of a Delaware limited liability company, violated his fiduciary duty to a

---

[10] *Sample v. Morgan*, 935 A.2d 1046, 1055 (Del. Ch. 2007).
[11] *Id.*
[12] *Maloney-Refaie v. Bridge at Sch., Inc.*, 958 A.2d 871, 877 (Del. Ch. 2008).
[13] *Id.*
[14] *Fisk Ventures, LLC, v. Segal*, 2008 WL 1961156, at *6 (Del. Ch. May 7, 2008).
[15] *Hartsel v. Vanguard Grp., Inc.*, 2011 WL 2421003, at *7 (Del. Ch. June 15, 2011) (internal citations omitted).

4

member of the company and to the company itself."[16] NCM's argument here depends on sufficiently pleading breaches of fiduciary duties by Cutrone in Counts IV and V,[17] which I held earlier it has not.[18] Therefore, Section 18-109 does not establish personal jurisdiction in this matter.

### B. Conspiracy Theory

NCM alleges that Cutrone "conspired with his colleagues, including State and members of LVI's board, and with LVI to, and did, commit fraud"[19] and argues that this alleged conspiracy provides personal jurisdiction over Cutrone.[20] Like NCM's attempt to premise personal jurisdiction on Section 18-109, this argument can be disposed of briefly. According to our Supreme Court,

> a conspirator who is absent from the forum state is subject to the jurisdiction of the court, assuming he is properly served under state law, if the plaintiff can make a factual showing that: (1) a conspiracy to defraud existed; (2) the defendant was a member of that conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) the defendant knew or had reason to know of the act in the forum state or that acts outside the forum state would have an effect in the forum state; and (5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy.[21]

---

[16] Countercl. Pl.'s Answering Br. 8. Section 18-109 provides for personal jurisdiction over managers of LLCs for actions in Delaware "involving or relating to the business of the limited liability company or a violation by the manager . . . of a duty to the limited liability company." 6 *Del. C.* § 18-109.

[17] *See, e.g.*, Countercl. Pl.'s Answering Br. 10 (arguing that Count V involves and relates to the business of NorthStar); *id.* at 11 (arguing that Count V alleges a breach of fiduciary duty to NorthStar); *id.* at 12 (arguing that Count IV satisfies the requirements of Section 18-109).

[18] *LVI Grp. Investments, LLC*, 2017 WL 1174438, at *10.

[19] CC. ¶ 8.

[20] *See* Countercl. Pl.'s Answering Br. 18–20.

[21] *Istituto Bancario Italiano SpA v. Hunter Eng'g Co.*, 449 A.2d 210, 225 (Del. 1982).

5

This test is construed narrowly; plaintiffs must "assert specific facts, not conclusory allegations, as to each element."[22]

NCM's attempt to establish personal jurisdiction via a conspiracy theory fails because "[a] corporation cannot conspire with itself."[23] NCM alleges a conspiracy between LVI, LVI's CFO (Cutrone), LVI's CEO (State), and LVI board members.[24] As this Court has explained, however, "a corporation generally cannot be deemed to have conspired with its officers and agents for purposes of establishing jurisdiction under the conspiracy theory."[25] NCM, citing a case from the Third Circuit, *Johnston v. Baker*,[26] argues that this general rule does not apply here because it has pled that Cutrone acted for "his own personal benefit because he was an LVI owner and was to become CFO of the new company with substantial compensation," that is, Cutrone would become CFO of NorthStar with a "substantial" salary.[27] However, "[c]ourts interpreting the personal reasons exception of *Johnston* . . . have read it to mean a personal animus and/or desire for financial benefit *other than one's corporate salary*."[28] Moreover, "[n]owhere in . . . *Johnston* is there any suggestion that the

---

[22] *Hartsel*, 2011 WL 2421003, at *10.

[23] *Amaysing Techs. Corp. v. Cyberair Commnc'ns, Inc.*, 2005 WL 578972, at *7 (Del. Ch. Mar. 3, 2005) (quoting *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952)).

[24] *See* CC. ¶ 8.

[25] *Amaysing Techs. Corp.*, 2005 WL 578972, at *7.

[26] 445 F.2d 424 (3d Cir. 1971).

[27] Countercl. Pl.'s Answering Br. 20.

[28] *Amaysing Tech. Corp.*, 2005 WL 578972, at *8 (emphasis added) (internal quotation marks omitted).

desire to protect or enhance one's salary makes an agent sufficiently independent of the corporation to be capable of conspiring with it."[29]  I therefore find that personal jurisdiction cannot be premised on NCM's conspiracy theory.

*C. Section 3104(c)*

I turn, now, to NCM's principal jurisdictional argument raised in briefing: that statutory jurisdiction is conferred by our long-arm statute, 10 *Del. C.* § 3104.  In the Counterclaim, NCM proposed that Cutrone is subject to personal jurisdiction "because he has caused tortious injury in Delaware."[30]  Thus, the Counterclaim specifically asserts jurisdiction pursuant to Section 3104(c)(3), which provides personal jurisdiction over any nonresident who "[c]auses tortious injury in the State by an act or omission in this State."[31]  The problem here is that Cutrone has committed no act or omission in Delaware.  NCM thus fails to "establish *both* elements of subsection (c)(3): an injury *and* an act or omission in Delaware."[32]

In briefing, NCM changed its theory of jurisdiction from that stated in the Counterclaim.  It did not assert that Section 3104(c)(3) applies; instead, it now relies on Section 3104(c)(1), which provides for personal jurisdiction over any nonresident who "[t]ransacts any business or performs any character of work or service in the

---

[29] *Id.* (quoting *Coulbourne v. Rollins Auto Leasing Corp.*, 392 F. Supp. 1198, 1201 (D. Del. 1975)).
[30] CC. ¶ 8.
[31] 10 *Del. C.* § 3104(c)(3).
[32] *Hartsel*, 2011 WL 2421003, at *13 (emphasis added).

State."[33]  Since NCM now relies solely on Section 3401(c)(1), I consider whether personal jurisdiction exists over Cutrone under that provision, below.[34]

NCM seeks to establish personal jurisdiction over Cutrone on the ground that he "transacted business" in Delaware.  While, as just described, this argument is at odds with the stated justifications for personal jurisdiction set out in the Counterclaim,[35]  I note that NCM did allege therein that "Cutrone executed and caused to be filed with the Delaware Secretary of State a certificate of merger in connection with and to facilitate the Merger between LVI and NCM under Delaware law."[36]  NCM relies on this allegation in arguing for personal jurisdiction in its Answering Brief.  According to NCM, Cutrone's actions with respect to this certificate of merger, as well as his management of NCM and NorthStar, constitute "transacting business" under Section 3104(c)(1).[37]

As an initial matter, I note that our Supreme Court has instructed that Section 3104(c) "is to be broadly construed to confer jurisdiction to the maximum extent

---

[33] 10 *Del. C.* § 3104(c)(1).

[34] I note that NCM does argue that "Cutrone's signing of the certificate of merger was one step in the process of the Merger that is the subject of NCM's claims and which ultimately caused injury to NorthStar and NCM, in Delaware."  Countercl. Pl.'s Answering Br. 17.  To the extent such language is NCM's attempt to invoke Section 3104(c)(3), as I have noted, no act or omission by Cutrone occurred in Delaware.

[35] According to NCM's Counterclaim, "[t]his Court has personal jurisdiction over Cutrone because he consented by statute to jurisdiction in connection with his position as CFO of LVI and CFO of NorthStar, each a Delaware limited liability company and LVI subsidiaries which were also Delaware companies, and because he caused tortious injury in Delaware."  CC. ¶ 8.

[36] *Id.*

[37] Countercl. Pl.'s Answering Br. 15–17.

8

possible under the Due Process Clause."[38]  Under Section 3104(c)(1), however, a plaintiff still must demonstrate that "(1) the nonresident transacted some sort of business in the state, and (2) the claim being asserted *arose out of that specific transaction*."[39]

Cutrone, a nonresident of Delaware, was the CFO of LVI and served as the CFO of NorthStar for a period as well.  Contrary to NCM's argument, our case law is clear that simply serving as an officer of a Delaware entity, without more, is insufficient to establish personal jurisdiction under Section 3104(c)(1).  For instance, in *Kelly v. McKesson HBOC, Inc.*,[40] the court noted that Section 3104(c)(1) does not confer personal jurisdiction over a corporate officer unless "some act . . . actually occur[s] in Delaware."[41]  In other words, out-of-state service as an officer of a Delaware corporation, or LLC in this case, is insufficient "transaction of business" here to establish personal jurisdiction absent some act taken by such a manager in this State.[42]

---

[38] *Hercules Inc. v. Leu Tr. & Banking (Bahamas) Ltd.*, 611 A.2d 476, 480 (Del. 1992); *see also Chandler v. Ciccoricco*, 2003 WL 21040185, at *11 (Del. Ch. May 5, 2003) (noting that any problems of "liberal construction" of Section 3104(c) "can be policed by application of the minimum contacts analysis under the due process clause of the Fourteenth Amendment").

[39] *Fisk Ventures, LLC v. Segal*, 2008 WL 1961156, at *7 (Del. Ch. May 7, 2008) (emphasis added).

[40] 2002 WL 88939 (Del. Super. Ct. Jan. 17, 2002).

[41] *Id.* at *17.

[42] *See id.* ("Because [the Defendant CFO] did not have any contacts in Delaware, this Court will not establish personal jurisdiction on the mere fact that he was employed by a Delaware corporation.").

NCM also argues that Cutrone transacted business in Delaware by helping to prepare the allegedly false LVI Financial Statements and "obtaining NCM's reliance" on them.[43] At Oral Argument, NCM cited *Universal Capital Management, Inc. v. Micco World, Inc.*[44] for the proposition that knowingly providing false statements to a Delaware company is sufficient to establish personal jurisdiction.[45] In that case, the Superior Court held that a defendant "purposefully availed himself to the laws of Delaware" by "intentionally provid[ing] [p]laintiff with an alleged incomplete and limited accounting information for [the defendant company]."[46] Critically, however, the Court there was examining whether the relevant defendant was subject to personal jurisdiction under a conspiracy theory of jurisdiction, rather than under Section 3104(c)(1).[47] Thus, *Universal Capital* does not support NCM's attempt to premise personal jurisdiction on Cutrone's purported role in preparing LVI's allegedly fraudulent financial statements and inducing NCM to rely on them, done elsewhere than Delaware, as *transacting business* in this state. I find Cutrone's alleged actions with respect to the LVI Financial Statements insufficient to confer personal jurisdiction on him pursuant to Section 3104(c)(1). I also note that Cutrone denies, via affidavit, performing any act related to the LVI Financial Statements in

---

[43] Countercl. Pl.'s Answering Br. 16.
[44] 2011 WL 2347612 (Del. Super. Ct. June 2, 2011).
[45] *See* Oral Arg. Tr. 53:20–23 (Dec. 2, 2016).
[46] *Universal Capital Mgmt., Inc.*, 2011 WL 2347612, at *7.
[47] *Id.* at *6–7.

10

Delaware, and for good measure asserts that he did not participate in the decision to enter into the Merger.[48]

As mentioned above, however, NCM alleges in the Counterclaim that Cutrone did "execute[] and cause[] to be filed with the Delaware Secretary of State a certificate of merger in connection with and to facilitate the Merger between LVI and NCM under Delaware law."[49] NCM argues that this action constituted the "doing of business," sufficient to invoke statutory jurisdiction. In evaluating whether a complaint sufficiently alleges facts supporting jurisdiction under the long-arm statute, I must presume that allegations therein are true, but conclusory allegations denied by opposing affidavit are not subject to that presumption.[50] Here, Cutrone does not deny execution of a certificate of merger (the "Certificate"), although not the certificate pertaining to the merger creating NorthStar.[51] However, he specifically denies, via affidavit, that he created the Certificate or caused it to be

---

[48] Cutrone Aff. ¶¶ 7–8.
[49] CC. ¶ 8.
[50] *See, e.g.*, *Northside Cmty. Bank v. Friedman*, 2013 WL 6091701, at *3 (Del. Ch. Nov. 20, 2013) ("Proof of jurisdiction-conferring facts may consist of briefs, affidavits, other extrinsic evidence in the record, and allegations contained in a verified complaint where . . . those allegations have not been rebutted by an opposing party's affidavits."); *Hartsel*, 2011 WL 2421003, at *7 ("Specifically, when a motion under Rule 12(b)(2) is presented without an evidentiary hearing, as it is here, the plaintiff's burden is to point to sufficient evidence in the record to support a prima facie case that jurisdictional facts exist to support the two elements it must prove. In doing so, the court is not limited to the pleadings and can consider affidavits, briefs of the parties, and the available results of discovery. Still, allegations regarding personal jurisdiction in a complaint are presumed true, unless contradicted by affidavit . . . .").
[51] Cutrone Aff. ¶¶ 9–10.

11

filed in Delaware.[52]  I start with the premise that Cutrone's transaction of business, relevant to Delaware jurisdiction, consists of the execution of the Certificate. [53]

But the Certificate Cutrone executed did not cause the Merger between LVI and NCM.  Instead, the Certificate concerns a preceding merger consolidating several LVI entities into "LVI Parent Corp." (the "Certificate Merger").[54]  NCM was not a party to this transaction, nor does it challenge the propriety of the Certificate Merger.  While the Counterclaim is silent about the Certificate Merger, I conclude that it created LVI Parent Corp., the LVI entity that shortly thereafter merged with NCM in the merger at issue here.[55]  Thus, the Certificate caused a predicate merger that was an antecedent to, but did not itself effect, the Merger that is the subject of this litigation.

"The involvement of a defendant in arranging, either directly or through an agent . . . for the filing of a corporate instrument in Delaware that facilitated transactions under challenge in litigation . . . has been repeatedly recognized as sufficient to constitute the transaction of business under § 3104(c)(1)."[56]  Nevertheless, this Court has not held that the act of signing a corporate instrument outside of Delaware, as Cutrone did here,[57] without more, is sufficient to count as

---

[52] *Id.* ¶ 9.
[53] *Id.*
[54] Certificate of Merger.
[55] *See* CC. Ex. A (the "Contribution Agreement").
[56] *Sample*, 935 A.2d at 1057.
[57] Cutrone Aff. ¶ 9.

12

the transaction of business under Section 3104(c)(1).[58] More significantly, even if signing the Certificate—ultimately filed in Delaware—constituted "transacting business" in this state, the cause of action must *arise from* that transaction to confer personal jurisdiction.[59] The "arising from" language requires that "the defendant's act set in motion a series of events which form the basis for the cause of action before the court."[60] To confer jurisdiction, the transaction of business must have a "tight nexus" to the cause of action and must "form a *source of the claim*."[61] Indeed, "[t]his court has declined to exercise personal jurisdiction over defendants who were not meaningfully involved in structuring the underlying transaction or negotiating the terms of the deal."[62]

As an example of a sufficiently tight nexus, in *Sample v. Morgan*, fiduciaries of a Delaware entity allegedly issued a large block of voting stock to themselves at an unfair price, an action made possible by a certificate amendment lowering the par

---

[58] *See Kelly*, 2002 WL 88939, at *17 (reasoning that the signing of a registration statement in California on behalf of a Delaware corporation did "not meet the contacts necessary to establish personal jurisdiction under 10 *Del. C.* § 3104(c)(1)").

[59] 10 *Del. C.* § 3104(j) ("When jurisdiction over a person is based solely upon this section, only a cause of action *arising from* any act enumerated in this section may be asserted against the person." (emphasis added)).

[60] *Microsoft Corp. v. Vadem, Ltd.*, 2012 WL 1564155, at *7 (Del. Ch. Apr. 27, 2012) (internal quotation marks omitted).

[61] *Sample,* 935 A.2d at 1057 n.43 (emphasis added); *see also Chandler*, 2003 WL 21040185, at *11 (explaining that the cause of action must have a "nexus to the transaction of business that took place in the State").

[62] *Terramar Retail Ctrs., LLC v. Marion #2-Seaport Tr. U/A/D/ June 21, 2002*, 2017 WL 3575712, at *8 (Del. Ch. Aug. 18, 2017).

13

value of the corporation's shares.[63] This Court explained that the certificate amendment filed by the defendant law firm was "directly at issue in the claims against the moving defendants" and, after noting that the law firm advertised itself as providing "coast-to-coast legal services" and offered advice on Delaware law, held that the defendant law firm was therefore subject to personal jurisdiction in Delaware.[64] Similarly, this Court in *Chandler v. Ciccoricco* reasoned that because filing a "Certificate of Designation of Rights and Preferences" was a necessary act to issue preferred stock, and certain counts of the plaintiffs' complaint pertained to the validity of that preferred stock issuance, a nexus existed between a defendant filing that certificate and the cause of action sufficient to confer jurisdiction.[65]

By contrast to the cases discussed above, Cutrone did *not* file the Certificate here, and avers he did not cause it to be filed, and neither the Certificate itself nor the Certificate Merger it effected is at issue in the claims before me. The Certificate was for a merger that was, I assume, a predicate to the Merger between LVI and NCM. NCM does not challenge the Certificate Merger itself in any way, and does not allege that the Certificate or Certificate Merger itself embodies fraud, or caused the fraud for which it seeks redress. Undoubtedly, there was a nexus between the Certificate Merger, the Merger between LVI and NCM, and the fraud claims. That

---

[63] *Sample*, 935 A.2d at 1048.
[64] *Id.* at 1047–48, 1057.
[65] 2003 WL 21040185, at *11.

nexus, however, is not tight, and Cutrone's act here does not form a source of the claim. Under those facts, I do not find a sufficient nexus to exist between Cutrone's signing the Certificate and the claims before me to support jurisdiction. Accordingly, I find that Cutrone is not subject to personal jurisdiction under Section 3104(c)(1).[66]

### III. CONCLUSION

For the foregoing reasons, Cutrone's Motion to Dismiss for lack of personal jurisdiction is granted. IT IS SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III

---

[66] Because there is no statutory basis for exercising personal jurisdiction over Cutrone, I need not reach the question whether exercising personal jurisdiction over him would violate the Due Process Clause of the Fourteenth Amendment. *See, e.g.*, *Abajian v. Kennedy*, 1992 WL 8794, at *9 (Del. Ch. Jan. 17, 1992) (declining to decide "whether sustaining jurisdiction over [a defendant] would violate due process requirements of the 14th Amendment" because the defendant was "not subject to personal jurisdiction under Delaware's long-arm statute").

15