### Elizabeth WILLIAMS

v.

### Stanley BASHMAN, Spencer M. Wertheimer and Harold M. Kane, Individually and trading as Bashman, Wertheimer & Kane and Michael Radbill.

Civ. A. No. 77–2243.

United States District Court, E. D. Pennsylvania.

Sept. 12, 1978.

---

George J. O'Neill, Philadelphia, Pa., for plaintiff.

Theodore Flowers, White & Williams, Philadelphia, Pa., for defendants.

## ADJUDICATION

JOSEPH S. LORD, III, Chief Judge.

The plaintiff in this legal malpractice case alleges that she was injured in 1973 when she caught her foot in an uncovered vent pipe on a sidewalk and that shortly thereafter she entered into a contract with the defendant law firm to represent her in a personal injury case against the City of Philadelphia and the owner of the property on whose sidewalk she had fallen. She asserts that the defendant's negligence in failing to initiate an action against the city and the property owner or otherwise to protect her legal interests precluded her from recovering damages in a personal injury suit. The plaintiff claims as damages the lost potential recovery in that personal injury case and additional pain and suffering caused by the defendant's negligence.

After a non-jury trial, I make the following findings and conclusions.

### FINDINGS OF FACT

1. The plaintiff is a citizen of South Carolina. The defendant was in 1973 and 1974 a partnership engaged in the practice of law in Philadelphia, Pennsylvania. All the partners in that firm are citizens of states other than South Carolina.

2. Between 6:00 and 7:00 P.M. April 27, 1973, the plaintiff was walking on the sidewalk on the south side of the 2700 block of West Allegheny Avenue in Philadelphia. While she was passing the house at 2730 West Allegheny Avenue, she stepped in a hole on the sidewalk, caught her foot in that hole and fell on her right elbow and wrist.

3. The hole in which the plaintiff caught her foot was a vent pipe, four to six inches in diameter, whose cover was missing and which was surrounded by crumbled sidewalk. The sidewalk around the vent was depressed several inches below the general sidewalk level. At the time of the plaintiff's fall, it was dark and raining, and the pipe and depression around it were filled with water.

4. In stepping in a hole under those conditions, the plaintiff did not fail to exercise reasonable care.

5. The pipe cover had been missing, or at least its connection to the pipe had been noticeably loosened, before April 26, 1973.

6. The house at 2730 West Allegheny Avenue was owned by James M. Williford at the time of the accident. Williford passed by the vent every day as he entered and left the house. He first noticed that the vent cover was missing not before the morning of April 29, 1973, two days after the plaintiff was injured. He put a new cover on the pipe later that day.

7. Before he replaced the pipe cover, Williford took no steps to repair the hole or to warn pedestrians of the danger it presented.

8. The City of Philadelphia took no steps at any time either to remove the danger

created by the uncovered pipe or to warn pedestrians of the danger it presented.

9. A missing or loose cover to a vent pipe posed a danger to pedestrians using the sidewalk at 2730 West Allegheny Avenue.

10. At the time the plaintiff was injured, Williford was not aware that the cover was missing.

11. At the time the plaintiff was injured, Williford would have known the pipe cover was missing or dangerously loose had he exercised reasonable care, in light of his testimony that he passed by the vent several times a day.

12. By failing to repair this dangerous condition in the sidewalk or to warn pedestrians of the danger it posed to them by the time plaintiff was injured, Williford failed to exercise reasonable care.

13. At the time the plaintiff was injured, the City of Philadelphia did not know of the dangerous condition of the pipe, nor would it have known of any such condition had it exercised reasonable care.

14. The City of Philadelphia did not fail to exercise reasonable care in not repairing or warning pedestrians of this dangerous condition.

15. Plaintiff was aware by July 1973 that she might have had a cause of action against the property owner of the house at 2730 West Allegheny Avenue, Philadelphia, for any injuries she sustained as a result of the fall.

16. As a result of her fall on April 27, 1973, the plaintiff was treated for injuries to her left lower leg and foot, which were placed in a cast on the same day. The cast was changed on May 30, 1973, and was removed on June 24, 1973. The plaintiff had to use crutches until some time in September 1973.

17. Plaintiff's fall also was a substantial cause of pains to her arms as a result of using crutches and of pains to her right hip and upper and lower back. The hip and back pains were recurring, each approximately once a month, at the time plaintiff testified in this trial, nearly five years after her accident.

18. At the time she was injured, the plaintiff was employed by a nursing home as a licensed practical nurse. She earned $3.50 per hour and worked eight hours a day, from five to seven days a week. Since she did not establish, however, either the probability that she would have worked more than five days a week, or what the length of her average work week was, I find she worked a forty-hour week.

19. At the time of her injury, the plaintiff was on a leave of absence from her employment for medical reasons. That leave of absence had commenced in March 1973, and the plaintiff was scheduled to return to work in July 1973. She had taken leaves of absence from her job in 1970, 1971 and 1972 for medical reasons.

20. Plaintiff has been unable since April 27, 1973, to work as a licensed practical nurse.

21. Had she not suffered injuries in her fall on April 27, 1973, the plaintiff would have returned to work in the fall of 1973 but would have been able to work for only six more months, during which time she would have earned $3,640.

22. As a result of injuries suffered in her fall on April 27, 1973, the plaintiff has endured physical pain and suffering in the amount of $6,000.

23. In an action by plaintiff against Williford, she would not have been barred from recovery by contributory negligence. Williford had sufficient assets for the plaintiff to collect a judgment of $9,640 against him.

24. The plaintiff's claim against Williford and the City of Philadelphia would not have been resolved by settlement before the entry of judgment for the plaintiff.

25. In July 1973, three months after she was injured, the plaintiff retained Spencer M. Wertheimer, a partner in the defendant law firm, to represent her in her personal injury case. At that time the plaintiff entered into an agreement for representation by the defendant firm.

26. In the year after she entered into the agreement with the defendant firm, the

plaintiff attempted to contact Wertheimer to inquire about the status of her case. In July 1974 she received a letter from Michael Radbill, an employee of the defendant, informing her that he was representing her in her pending case. The plaintiff spoke to Radbill once after receipt of this letter. She continued to try to contact Wertheimer and Radbill, but most of her calls were not responded to or returned. In the plaintiff's only conversation with Wertheimer, he assured her that her case was in court and told her not to worry because it was being handled by the defendant.

27. At some time after July 1974 and before August 1976 the defendant partnership was dissolved.

28. The defendant law firm did not institute a personal injury action on plaintiff's behalf against the owner and/or occupant of the home at 2730 West Allegheny Avenue or the City of Philadelphia.

29. In failing to institute an action, a partner or partners and/or employee or employees of the defendant firm failed to exercise within the scope of their employment reasonable professional care and diligence in their representation of the plaintiff. By failing to institute a suit on behalf of the plaintiff, both Wertheimer and Radbill failed to exercise reasonable professional care and diligence in their representation of the plaintiff.

30. As a result of the negligence of the defendant law firm and of partners and/or employees of that firm in the scope of their employment and before the dissolution of the partnership, no suit was instituted on plaintiff's behalf against the owner and/or occupant of 2730 West Allegheny Avenue and/or the City of Philadelphia before April 27, 1975, and she has recovered no compensation for her injuries.

31. Plaintiff endured no mental suffering or anguish as a result of the defendant's negligence in failing to bring suit on her behalf.

32. At some time before August 30, 1976, the plaintiff filed a complaint as to the defendant's handling of her personal injury case with the Disciplinary Board of the Supreme Court of Pennsylvania. Plaintiff was informed for the first time that her personal injury claim would be barred by the statute of limitations when she received a letter from the Disciplinary Board dated September 21, 1976.

## DISCUSSION

There are three factual issues raised in this case which seem to warrant brief discussion. All of them are dependent on the standard of proof imposed on a plaintiff in a legal malpractice case. The orthodox view, and indeed virtually the universal one, is that when a plaintiff alleges that the defendant lawyer negligently provided services to him or her as a plaintiff in the underlying action, he or she must establish by the preponderance of the evidence that he or she would have recovered a judgment in the underlying action in order to be awarded damages in the malpractice action, which are measured by the lost judgment. *See, e. g., Christy v. Saliterman,* 288 Minn. 144, 150, 179 N.W.2d 288, 294 (1970). While we know of no Pennsylvania case clearly establishing this standard with regard to the causation of damages, which requires in effect that a plaintiff prove the merits of the underlying case, we note that at least one commentator has interpreted this to be the law in Pennsylvania, Belden, *Professional Liability of Lawyers in Pennsylvania,* 10 Duquesne L.Rev. 317, 348 (1972), and in the light of its apparent ubiquity we will apply that standard here.

The first of the three factual issues is the actual or constructive notice of the property owner or the municipality that a dangerous condition existed on the sidewalk at the time the plaintiff was injured, which she would have had to have proved to prevail against either party in a personal injury suit.[1] When plaintiff retained the de-

---

1. I note preliminarily that this case illustrates the hardships faced by plaintiffs in legal malpractice cases generally. *See Note, The Stan-* *dard of Proof of Causation in Legal Malpractice Cases,* 63 Cornell L.Rev. 666, 670 (1978).

fendant law firm, she placed in its collective hands the responsibility for her case, including undertaking discovery to determine the merits of her case and, if necessary, to prove the elements of her claim at trial. As a result of the defendant's negligence, apparently no such discovery was taken and there is only limited and circumstantial evidence as to when the dangerous condition on the sidewalk arose. As a result, the very negligence of defendant which is alleged here, and indeed is not seriously disputed, could become the defendant's staunchest tactical ally in defending an action based on that negligence. However, even applying the strict doctrine that plaintiff in a malpractice case must prove all the elements in the underlying cause of action, I conclude that the plaintiff has met her burden here because I find it more probable than not that the dangerous condition existed at least for some days before the plaintiff was injured and that the defendant property owner knew or should have known of this condition.

Plaintiff, of course, cannot point to the precise moment when the defect appeared. This is hardly surprising because by the very nature of the defect it is not one which occurred in a trice or in the wink of an eye; rather, it is one which resulted from a long, continued period of deterioration. The uncontradicted evidence shows that the pipe was filled with water and apparently clogged by debris, a condition which would be unlikely to occur in a pipe of that size within the space of a day; that a portion of the pipe covering was still attached to the top of the pipe, suggesting that the cover had been in the process of breaking for some time rather than being severed suddenly, e. g., by an act of vandalism; and that the pipe cover was not still in the immediate area.

■ The failure or the inability of the plaintiff to pinpoint the time the defect arose, is, of course, not fatal to her case. *Stais v. Sears-Roebuck and Co.,* 174 Pa.Su-

per. 498, 503, 102 A.2d 204, 206, *aff'd,* 378 Pa. 289, 106 A.2d 216 (1954). Were it otherwise, a plaintiff could rarely recover in a sidewalk falling case. Indeed, it is the nature of the defect that points to its long continued existence and which puts the defendant on constructive notice and therefore affixes liability. Williford, the owner of the property, testified that he passed by the vent pipe several times each day, that he first noticed the pipe was missing one morning and that he repaired it the same day. While I believe this testimony established that Williford did not have actual knowledge of the defect at the time the plaintiff was injured, I do not think it proves either the time the defect came into existence or the lack of constructive notice. Because of the nature of the defect, I have found that it existed for a substantial period before plaintiff's injury. Based on this finding, I must conclude that Williford would have known of this condition had he exercised reasonable care, particularly in light of his testimony that he passed the area several times each day. *See Bacsick v. Barnes,* 234 Pa.Super. 616, 622, 341 A.2d 157, 161 (1975). I further find that it was unreasonable for one with such knowledge not to take steps either to warn of this dangerous condition or to correct it.[2] In sum, I conclude that plaintiff fairly established Williford's liability on the underlying cause of action.

■ The plaintiff has claimed as one element of her damages lost wages for six years after she fell (*i. e.,* until she reaches age 65), on the theory that this injury prevented her from working for that period. The defendant counters that she had already lost her job and no loss of earning capacity is attributable to the injury involved in the underlying cause of action. I find that the probable loss of earning capacity was somewhere between these two extremes and that the plaintiff would have returned to work but would have been able to continue providing services as a licensed

**2.** This factual analysis does not apply to the City of Philadelphia. There were no facts suggesting that the City had actual or constructive notice of the defect, and therefore it could not have been liable to plaintiff.

practical nurse for only six months in light of her other physical ailments. Consequently, the diminution in her earning capacity is measured by the loss of six months' wages, or $3,640.

█ Finally, I raised at trial the question of whether the plaintiff could recover in this case if I were to find that she would have settled out of court the underlying personal injury action against one or both defendants. The cases which both parties cited and those which I have found from other jurisdictions as well as from Pennsylvania are singularly uninstructive on this point, and I have found no authority expressly endorsing or rejecting the proposition that a plaintiff can recover in a legal malpractice case the settlement value of the underlying case. Fortunately, however, in view of my factual finding as to settlement, I need not decide the question at this time.

Ordinarily, the probability of settlement would be proved by expert testimony on the usual outcome of similar cases, including such factors as the merits of the case, the size of the award that the plaintiff might have received and whether the defendant in the underlying action would have been represented by counsel for an insurance company. The same expert or experts presumably would testify as to the settlement value of the underlying case. In this non-jury case, however, the parties stipulated to my competence to make an expert assessment of the probability and value of settlement in the personal injury action against the property owner and municipality. This trip-and-fall case, with a close question of the property owner's liability and a limited damage claim, is of a type ordinarily likely to end in settlement when brought against a defendant whose insurance company retains counsel. Here, however, there has been no showing that the property owner was insured and would have been represented by counsel from his insurer. In light of that vital gap, I am unable to conclude that the plaintiff would have been compensated through settlement with Williford. Therefore, it would be gratuitous for me now to decide whether, as a matter of law, the settlement value of the underlying action is recoverable in a legal malpractice action.

I find further that the possibility of the City of Philadelphia's liability in this case was so remote that it was not probable that the plaintiff would have received any compensation from it through settlement of her claim.

## CONCLUSIONS OF LAW

1. Because there is complete diversity of citizenship and the amount in controversy exceeds $10,000, exclusive of interest and costs, the court has jurisdiction over the subject matter in this suit under 28 U.S.C. § 1332. The court also has jurisdiction over the parties in this suit.

2. The City of Philadelphia and Williford each had a duty to exercise reasonable care in keeping the sidewalk at 2730 West Allegheny Avenue free from defects which would endanger pedestrians.

3. The City of Philadelphia had neither actual nor constructive notice of any defects in that sidewalk as of April 27, 1973.

4. Williford did have constructive notice that the vent pipe cover was either missing or dangerously loose on the evening of April 27, 1973.

5. In not repairing or warning pedestrians of the dangerous condition as of April 27, 1973, Williford was negligent.

6. Williford's negligence was the proximate cause of the plaintiff's injury.

7. Plaintiff was not guilty of contributory negligence.

8. Williford would have been liable to the plaintiff for her loss in earning capacity and her pain and suffering, totalling $9,640. If her personal injury claim against Williford had been tried, the result of that trial would have been a verdict for the plaintiff in that amount.

9. If the plaintiff's personal injury claim against the City of Philadelphia had been tried, the result of that trial would have been a verdict for the City of Philadelphia.

10. Beginning in July 1973, the defendant partnership and its partners and employees owed to the plaintiff a duty to exercise reasonable professional care in the prosecution of her personal injury claim against Williford and the City of Philadelphia.

11. The defendant partnership's partners and employees negligently breached the duty of care they owed to the plaintiff.

12. As a result of their negligence, the partners and employees of the defendant partnership failed to institute a personal injury claim on behalf of plaintiff against Williford and the City of Philadelphia on or before April 27, 1975. On that date the plaintiff's personal injury claim was barred by the Pennsylvania statute of limitations. 12 Pa.Stat.Ann. § 34.

13. The negligence of the defendant partnership's partners and employees was the proximate cause of the plaintiff's loss of a verdict against Williford in the amount of $3,640 for lost earning capacity and $6,000 for pain and suffering.

14. The defendant partnership is liable to plaintiff for the professional malpractice of its partners and employees in the amount of $9,640.

15. By failing to render to plaintiff reasonable professional services, defendant breached its contract with her.

16. The consequential damages recoverable by plaintiff for defendant's breach of contract are equal to the amount of the judgment she would have received had the defendant performed and brought suit in her behalf—i. e., the verdict she would have received in her personal injury action, $9,640.