**Curtis G. GANS**

v.

**S. Simpson GRAY.**

**Civ. A. No. 82–0352.**

United States District Court,
E.D. Pennsylvania.

May 24, 1985.

Patrick Ryan, Drinker, Biddle & Reath, Philadelphia, Pa., for plaintiff.

Thomas M. Clark, Fox, Rothschild, Frankel and O'Brien, Philadelphia, Pa., for defendant.

## MEMORANDUM

GILES, District Judge.

This action arises out of Curtis G. Gans' claim that his former attorney, S. Simpson, Gray, committed legal malpractice in the course of prosecuting his personal injury action against the National Railroad Passenger Corporation ("AMTRAK") under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.* (1976).

*See Gans v. National Railroad Passenger Corp., ("AMTRAK"),* Civil Action No. 77-3883 (E.D.Pa.1980) ("the underlying action"). Defendant has moved for summary judgment. For the following reasons, defendant's motion shall be granted.

## I. FACTS

On November 11, 1977, Gans, by his counsel, Raynes, McCarty & Binder ("Raynes"), commenced the underlying action. The case was assigned by random selection to former United States District Court Senior Judge John Morgan Davis. In the underlying action, Gans sought compensatory damages for injuries allegedly sustained during the course of his employ as a trackman with AMTRAK. Specifically, Gans claimed that he sustained bodily injury when an AMTRAK bus, in which he and other AMTRAK employees responsible for railroad track maintenance were being transported to their assigned work area, was involved in an accident with a Southeastern Pennsylvania Transportation Authority ("SEPTA") bus.

Following completion of the discovery phase of the underlying action and, on the eve of trial, Gans insisted that Raynes withdraw as his legal representative. Gans approached Gray about obtaining his legal services on or about November 20, 1979. Raynes subsequently transferred its entire file relating to the underlying action to Gray for his evaluation. On November 29, 1979, Raynes formally withdrew from the case and Gans was thereafter represented by Gray.

In December 1979, Gans informed Gray that he had another potential cause of action against AMTRAK. Gans alleged that he had sustained further bodily injury in 1978 while lifting lumber during the course of his duties as a trackman for AMTRAK. Gray responded to Gans' new claim by filing the requisite motions to allow Gans to make his additional claim against AMTRAK. Senior Judge Davis granted Gans' motion for leave to amend his complaint and allowed plaintiff the opportunity to

conduct limited discovery on the issue of Gans' new claim. Gray did in fact file an amended complaint adding Gans' second cause of action and conducted ample discovery of this issue. Gray Aff. at ¶ 12.

Gray represented Gans during the entire trial of the underlying action. Both negligence causes of action asserted by Gans were submitted to a jury for its consideration. In responding to special interrogatories, the jury answered that AMTRAK was not negligent in either instance. *See* Exh. C–4 to Def. Mot. for Sum. Judg. Accordingly, on May 8, 1980, judgment was entered in favor of AMTRAK and against Gans. *See* Exh. B to Pl's Resp. to Def's Mot. for Sum. Judg.

On May 19, 1980, Gray filed a motion for a new trial arguing that a finding of no negligence on the part of AMTRAK was against the weight of the evidence adduced at trial. Gray argued that the "mere fact that the [AMTRAK] bus hit the SEPTA bus from the rear on a day when the pavement was wet, and the driver of the bus knew it was wet" was sufficient evidence of negligence to warrant a new trial on the issue of liability. Exh. B to Pl's Mem. in Opp. to Def. Mot. for Sum. Judg. at 3.

On March 5, 1981, Senior Judge Davis found that, although plaintiff had timely filed his motion for a new trial, he had failed to comply with Rule 34 of the Local Rules of Civil Procedure of the United States District Court for the Eastern District of Pennsylvania requiring that the moving party either order a transcript of the trial proceedings or file a motion to be excused from the requirement of ordering a transcript.[1] *See* Exh. C–6 to Def. Mot.

for Sum. Judg. at 2. Gray not only failed to request a trial transcript, but he did not request leave to be excused from the provisions of Local Rule 34 until 165 days after expiration of the ten-day filing requirement. Finally, in a lengthy discourse, Senior Judge Davis ruled that, even if he had permitted plaintiff to proceed without the proper ordering of transcripts, the jury verdict in favor of AMTRAK was supported by the weight of the evidence. Exh. 6 to Pl's Mot. for Sum. Judg. at 5. Accordingly, he dismissed the action based on plaintiff's failure to comply adequately with the provisions of Local Rule 34. The order of dismissal was not appealed.

Proceeding without counsel, Gans filed the instant action against Gray in February 1982. In May 1982, again acting *pro se*, Gans filed an amended complaint alleging certain acts or omissions by Gray which he believes give rise to several causes of action.[2] On November 22, 1983, Patrick T. Ryan, Esquire, through the Volunteer Lawyer's Action Program, entered his appearance on behalf of Gans. Ryan, acting as counsel to Gans, filed both plaintiff's pretrial memorandum and his memorandum in opposition to defendant's motion for summary judgment.

Plaintiff's amended complaint alleges diverse and ill-defined causes of action against his former attorney. However, as a *pro se* litigant, Gans is entitled to a liberal construction of his lay-drafted pleading. *Boag v. MacDougall*, 454 U.S. 364, 365, 102 S.Ct. 700, 701, 70 L.Ed.2d 551 (1982); *Bangert v. Harris*, 553 F.Supp. 235, 238 (M.D.Pa.1982). The amended com-

---

**1.** Under former Rule 34 of the Local Rules of Civil Procedure, failure to order a trial transcript within ten days of filing a post-trial motion without a showing of good cause for such failure mandated dismissal of the action for lack of prosecution. Under the current version of the Local Rules, Rule 20(e), the potential harshness of Rule 34 is reduced by allowing the district court to exercise its discretion in determining whether to dismiss an action for failure to request a transcript or provide an adequate excuse for such failure. Because Rule 34 was in effect when Gans' post-trial motion was filed, Senior Judge Davis found its provisions control-

ling. However, he also indicated that he would have denied plaintiff's motion for leave to be excused from the requirements of the procedural guidelines set forth in the current Local Rule 20(e).

**2.** Although plaintiff failed to allege any basis for this court's exercise of subject matter jurisdiction, I previously ruled that Gans' amended complaint was properly based on diversity of citizenship under 28 U.S.C. § 1332. *See* Order of July 20, 1982, No. 82–0352 (E.D.Pa.) (Giles, J.).

plaint is sufficiently stated that this court can construe the pleadings as to do substantial justice. *See* Fed.R.Civ.P. 8(f).

In his amended complaint, Gans refers to Gray's "intentional" misconduct during the course of his representation in the underlying action. While couched in terms of a constitutional argument for ineffective assistance of counsel under the sixth amendment,[3] plaintiff's action is best characterized as one for legal malpractice.[4]

Plaintiff's amended complaint, when read in conjunction with his counsel's interpretation of its contents, reveals a string of alleged acts or omissions at each phase of the representation: pretrial, trial and post-trial. Gans' most significant claim is that Gray was negligent in failing to comply with the "transcript" provisions of Local Rule 34 and in not appealing from Senior Judge Davis' dismissal on these grounds. Plaintiff believes that because of Gray's omissions, he lost any post-trial remedy to vindicate his right to recovery against AMTRAK.

In his motion for summary judgment, Gray asks this court to rule that as a matter of law his pretrial and trial conduct was not beyond the pale of reasonable conduct for an attorney in his position. Moreover, he alleges that he is entitled to judgment in his favor because there is no causal nexus between his conduct and any injury sustained by plaintiff. In a supplemental memorandum filed in support of his motion, Gray contends that Gans has simply failed to produce sufficient evidence to support his contentions as mandated under Fed.R.Civ.P. 56(e). With respect to the alleged post-trial failures, Gray does not assert that his non-compliance with the Local Rules of Civil Procedure was other than negligent. Rather, Gray maintains that any omission on his part did not result in any legally cognizable injury to plaintiff. In this respect, Gray rests on the proposition that Pennsylvania law requires proof of actual damages in a legal malpractice action. Gray argues that, since plaintiff has failed to produce evidence that he would have prevailed on the merits in any post-trial motion, a claim of actual damages is purely speculative. He maintains that the jury verdict in favor of AMTRAK was supported by the weight of the evidence,

---

**3.** Plaintiff has asserted what is essentially a civil rights claim under 42 U.S.C. § 1983, *see* Amended Complaint at ¶ 6. That is, plaintiff asserts that Gray's acts or omissions in prosecuting Gans' claim against AMTRAK rise to the level of a constitutional violation. This claim is frivolous. There is no constitutional right to effective assistance of counsel in a civil proceeding. *See* In re *Grand Jury Matter,* 682 F.2d 61, 66 (3d Cir.1982). Further, under section 1983, a plaintiff must allege deprivation of some constitutional right under color of state law. *Howell v. Cataldi,* 464 F.2d 272, 279 (3d Cir.1972). Gray engaged in the private legal representation of Gans and did not act as the representative of any governmental unit. Therefore, even read in an extremely favorable light, plaintiff's constitutional claim must fail.

**4.** Plaintiff asserts a cause of action based on Gray's defamation of his "character by slander and gossip." Am.Compl. at ¶ 9. Although Gans' defamation claim may bear some relevance to his allegations of legal malpractice, this claim is clearly tangential. Because this claim is peripheral to the major issues which this court has been asked to address, plaintiff asks this court to sever the defamation claim and to allow additional discovery on this limited issue. While I do not intend to belittle Gans' def-

amation claim by disposing of it in a footnote, to engage in excessive textual discourse would only tend to obscure the central issues facing this court.

Gans contends that he was defamed by some unspecified oral utterance. Gray contends that he never made a defamatory statement of or concerning plaintiff. Gray Aff. at ¶ 17. Plaintiff's *pro se* petition fails to specify the nature of the alleged defamatory statement. In this motion for summary judgment, defendant has placed this claim in issue. Under Pennsylvania law, it is then plaintiff's burden to prove the defamatory character of the alleged communication. 42 Pa.Cons.Stat.Ann. § 8343(a)(1) (Purdon's 1982); *Agriss v. Roadway Express, Inc.,* 334 Pa.Super. 295, 304, 483 A.2d 456, 461 (1984). Speculation that some defamatory statement was uttered by Gray to some heretofore unnamed third party three years after the institution of this action is hardly sufficient to withstand a motion for summary judgment. Fed.R. Civ.P. 56(e). If plaintiff cannot identify the defamatory statement at this point in time, it is hard to imagine that further discovery on this issue would reveal a cognizable defamatory injury under Pennsylvania law.

and hence, summary judgment in this action must be granted in his favor.

In response to defendant's motion, plaintiff seems to agree that this action sounds in negligence. Gans has advanced the theory that proof of damages is not a part of plaintiff's *prima facie* case in a legal malpractice action. Plaintiff concedes that he must show that Gray owed him a duty, that such duty was breached and that such breach caused him injury. However, he asserts that it is Gray's burden to show that plaintiff has not suffered any appreciable harm as a result of defendant's negligent conduct. Under this theory, plaintiff is not required to prove that the underlying claim was meritorious. Rather, once duty, breach and causation are shown, the burden would shift to the defendant to show that plaintiff would not have succeeded in the underlying action.

Nevertheless, plaintiff attempts to convince this court that he did have a meritorious claim in the underlying action. This contention is based primarily on the theory that the nature of the accident, a rear-end collision, must give rise to a irrebuttable presumption of negligence on the part of AMTRAK. In order to support his legal contentions, Gans has filed a sworn statement describing the alleged instances of malpractice. The only other relevant evidence supplied by plaintiff in opposition to the summary judgment motion is a copy of the jury instructions on the issue of the "sudden emergency doctrine."

## II. DISCUSSION

Under the principle set forth in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), this court is obliged to apply the substantive law of the forum state. Accordingly, we are bound by the decisional law of Pennsylvania. Although the courts of the Commonwealth have been faced with a steady rise in the number of professional malpractice cases, *see* Forage & McBride, *Annual Survey of Significant Developments in the Law: Tort Law*, 56 Pa.B.A.Q. 24, 35 (Jan. 1985), there is a dearth of reported case law dealing with the issue of attorney malpractice allegedly committed in the conduct of litigation. This is not to say, however, that there is an absence of established legal principles which guide this court.

The Pennsylvania Supreme Court has acknowledged the legitimacy of an action in either assumpsit or trespass by a client against his attorney for malpractice. *Guy v. Liederbach*, 501 Pa. 47, 57, 459 A.2d 744, 748 (1983). However, the supreme court has yet to address either the specific elements required to prove such causes or the precise burden of proof assigned to the litigants.

It is perhaps the confusion caused by the lack of supreme court precedent that has caused plaintiff to promote his somewhat novel theories on the applicable law. Plaintiff has proffered several arguments in support of his view that he does not have to show that he would have prevailed on the merits of the underlying action in order to succeed in this action. First, plaintiff argues that the instant case falls within the purview of section 323(a) of the Restatement (Second) of Torts (1965).[5] In interpreting section 323(a), the Pennsylvania Supreme Court held that the effect of this section is "to relax the degree of certitude normally required of plaintiff's evidence in order to make a case for the jury" as to defendant's liability. *Hamil v. Bashline*, 481 Pa. 256, 269, 392 A.2d 1280, 1286 (1978). Specifically, the court ruled that under the Restatement, once a plaintiff introduces evidence that defendant's

---

**5.** Section 323(a) of the Restatement (Second) of Torts provides:

§ 323. *Negligent Performance of Undertaking to Render Services*

One who undertakes gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for *physical harm* resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or....

*Id.* (emphasis added).

negligent act increased the risk of harm to plaintiff, *and that harm was in fact sustained,* it is for the jury to determine whether "that increased risk was a substantial factor in producing the harm." *Id.* It appears that plaintiff believes this relaxed burden of proof on the issue of causation will enable him to overcome defendant's motion for summary judgment. Plaintiff's theory on the applicability to and the effect of this section of the Restatement on the instant case is fatally flawed.

The language of the Restatement indicates that a plaintiff under this section must have suffered a *physical injury* resulting from the negligent rendition of services, whether gratuitous or contracted for. In the instant case, plaintiff seeks damages for injuries resulting from the negligent rendition of contracted for legal services. However, he does not assert any physical injury. Plaintiff has also failed to direct this court to any Pennsylvania decision applying section 323(a) to a legal malpractice case. In *Hamil,* the very case cited by plaintiff, the court applied section 323(a) to a medical malpractice case. The Pennsylvania Supreme Court limited its holding in *Hamil* to cases where the issue is "the adequacy of medical services rendered in a fact situation to which section 323(a) applies, . . . ." The instant fact pattern is simply not within the ambit of such a cause of action.[6]

Plaintiff's second theory is that proof of damages in a legal malpractice action is not required under Pennsylvania law. In order to sustain his theory, plaintiff relies on an opinion of this court written by Chief Judge Emeritus Lord. *See Williams v. Bashman,* 457 F.Supp. 322, 326 (E.D.Pa. 1978). Although Judge Lord recognized that there was no established case law in Pennsylvania requiring a legal malpractice plaintiff to establish by a preponderance of

the evidence that he would have received a favorable judgment in the underlying action in order to recover, he nevertheless applied such a standard to the facts of the case before him. *Id.* at 327. In *Williams,* plaintiff fairly established defendant's liability on the underlying cause of action. Once proof of damages had been established, Judge Lord went on to discuss the calculation of plaintiff's monetary award. In his discussion, he noted that there was an issue as to whether a plaintiff could recover the settlement value of the underlying action in a legal malpractice case. *Id.* at 328. However, because the court found that there was no possibility for settlement in *Williams,* it did not reach this issue. Despite plaintiff's protestations to the contrary, I fail to see how this dictum, which refers to the calculation of damages, undercuts the court's holding that proof of success on the merits of the underlying action is a part of a plaintiff's prima facie case under Pennsylvania legal malpractice law.

Citing no law to the contrary, plaintiff asks this court to follow what he believes is the holding in *Winter v. Brown,* 365 A.2d 381, 385 (D.C.App.1976). He asserts that *Winter* stands for the proposition that the burden is upon the defendant in a legal malpractice action to establish that the plaintiff could not have prevailed in the underlying action. I find plaintiff's position untenable. The *Winter* court made an initial determination that legal error had resulted in some damage to the malpractice plaintiff. This conclusion was apparently based on the jury's conclusion at trial that plaintiff's lawyers were negligent and that such negligence caused a cognizable injury to plaintiffs. *Id.* at 383. The *Winter* decision deals with the appropriate method of calculating damages. It was only after a finding of injury that the *Winter* court shifted the burden of establishing the cor-

---

**6.** Furthermore, even if section 323(a) were applicable to legal malpractice cases, neither that provision of the Restatement nor the *Hamil* decision obviates plaintiff's burden to prove actual damages. Under *Hamil,* a medical malpractice plaintiff's burden of proof is only reduced with respect to the issue of proximate

causation. *Id.,* 481 Pa. at 268–73, 392 A.2d at 1286–88. He must still prove a compensable injury. The *Hamil* court stated that under section 323(a), a jury question is not raised until plaintiff first introduces evidence "that harm was in fact sustained." *Id.* at 269, 392 A.2d at 1286.

rect measure of damages to the defendant. *Id.* at 382. The burden of determining the measure of damages is not identical to the burden of demonstrating injury. Moreover, even if this case were analogous to the instant action and found to be persuasive, this court is bound only by the law of Pennsylvania in this action and not by the law of the District of Columbia. *Erie, supra,* 304 U.S. at 78, 58 S.Ct. at 822.

Having rejected plaintiff's legal theories on the applicable law, I now turn to a discussion of what law this court finds controlling.

■ Since there is no decision issued by the Pennsylvania Supreme Court directly on point, this court must predict how that court would decide the issue. *McGowan v. University of Scranton,* 759 F.2d 287, 290 (3d Cir.1985). In the absence of more convincing evidence of what the state law is, this court should follow the decisions of the forum's intermediate appellate courts. *Fidelity Union Trust Co. v. Field,* 311 U.S. 169, 177–78, 61 S.Ct. 176, 177–78, 85 L.Ed. 109 (1940); *McGowan, supra,* at 290 (deci-

sions of intermediate courts strong indicia of how state supreme court would rule and in some cases are presumptive evidence of state law).

■ While the Superior Court of Pennsylvania has not ruled on the precise factual issues in this case, defendant suggests that the intermediate appellate courts have firmly established the elements of a cause of action in negligence. I concur. In *Schenkel v. Monheit,* 266 Pa.Super. 396, 399, 405 A.2d 493, 494 (1979), the superior court first ruled that there are three essential elements to a cause of action for legal malpractice:

1. The employment of the attorney or other basis for duty;[7]
2. The failure of the attorney to exercise ordinary skill and knowledge;[8] and
3. That such negligence was the proximate cause of damage to the plaintiff.

*Id.* (citing R. Mallen & V. Levitt, *Legal Malpractice* 123 (1977)). Following the lead of other jurisdictions, the *Schenkel* court concluded that proof of damages proximately caused by the attorney's negli-

---

7. Despite the abolition of privity in most negligence causes of action, the Pennsylvania Supreme Court has recently held that privity between the parties in an action based on legal malpractice remains a prerequisite to establishing a cause of action in negligence. *Guy, supra,* 501 Pa. at 54, 459 A.2d at 748. The *Guy* court ruled, however, that a party seeking to recover for injuries caused by attorney malpractice, but who is not in privity of contract with the attorney may sue under a contract theory of liability. *Id.,* at 57, 459 A.2d at 750. Although the court defined the class of plaintiffs who may fall under the umbrella of such a cause of action by limiting plaintiffs to third-party beneficiaries of the contract, it failed to give more than a passing remark to proof of damages. While the court implied that contract principles might apply to the measure of damages in other legal malpractice cases, it refused to expand on this possibility. *Id.,* at 58, 459 A.2d at 752. Since the court did not criticize or overrule *Duke & Co. v. Anderson,* 275 Pa.Super. 65, 73–74, 418 A.2d 613, 618 (1980), which ruled that proof of actual damages is a prerequisite to recovery in a legal malpractice action based in tort (trespass) or contract assumpsit, I will assume that the latter case is controlling. Furthermore, because plaintiff generally avers that his attorney failed to exercise the requisite duty of care toward him, and not that he failed to follow specific

instructions, I construe this action as one grounded in negligence. *See Hoyer v. Frazee,* 323 Pa.Super. 421, 424–26, 470 A.2d 990, 992–93 (1984); *Brennan v. Reed, Smith, Shaw & McClay,* 304 Pa.Super. 399, 413, 450 A.2d 740, 747 (1982). *Cf. Little v. York Cty. Earned Income Tax Bureau,* 333 Pa.Super. 8, 20, n. 3 481 A.2d 1194, 1201–02 n. 3 (citing *Moore v. McComsey,* 313 Pa.Super. 264, 269, 459 A.2d 841, 844 (1983)) (indicating that causes of action against attorneys for malpractice usually treated as breaches of contract but citing to case which only holds that cause of action sounding in negligence treated as tort cause of action for purposes of determining applicable statute of limitations).

8. *See also Hoyer, supra,* 323 Pa.Super. at 426, 470 A.2d at 993. The standard of care "is measured by the skill generally possessed and employed by practitioners of the profession." *Lentino v. Fringe Employee Plans, Inc.,* 611 F.2d 474, 480 (3d Cir.1979) (applying its interpretation of Pennsylvania law). In order to establish the relevant standard of care, and to determine whether that standard has been breached, expert testimony is required. *Id.* The only exception to this rule is where the matter is so simple that it is within the range of comprehension of laymen. *Id.*

gence is as crucial to a professional negligence suit as is proof of negligent conduct itself. *Id.* The superior court, quoting from *Budd v. Nixen,* 6 Cal.3d 195, 98 Cal. Rptr. 849, 852, 491 P.2d 433, 436–37 (1971), held that a malpractice plaintiff must show evidence that he has suffered "appreciable" harm. In *Schenkel,* plaintiff alleged that, since settlement negotiations had revealed a potential recovery in excess of that actually awarded him by a jury, his attorney's failure to join an additional defendant caused him to lose the difference between his potential recovery and his actual recovery. In affirming the trial court's grant of summary judgment in favor of defendant, the *Schenkel* court concluded that plaintiff had failed to produce sufficient evidence that defendants' alleged conduct had caused him more than speculative harm. *Id.,* 266 Pa.Super. at 400, 405 A.2d at 495.

In *Duke & Co. v. Anderson,* 275 Pa.Super. 65, 71, 418 A.2d 613, 618 (1980), the Superior Court of Pennsylvania extended the requirements set forth in *Schenkel,* specifically, proof of actual damages, to legal malpractice cases brought in contract as well as tort. Relying on *Williams, supra,* 457 F.Supp. at 322, and the weight of authority from other jurisdictions, *Duke & Co.* held that it is plaintiff's burden to establish that, "but for the negligence complained of, the client would have been successful in the prosecution or defense of the action in question." *Id.* at 74, 418 A.2d at 618 (citing *Trustee of Schools v. Schroeder,* 2 Ill.App.3d 1009, 1012–13, 278 N.E.2d 431, 433 (1971)). Judge Spaeth, speaking for a unanimous panel of the superior court, found that requiring proof of actual loss would have a necessary deterrent effect. It would protect attorneys against burdensome lawsuits brought by plaintiffs who are more disappointed with the result reached by a judge or jury in the underlying action than with the acts· or omissions of their attorneys. *See id.,* 275 Pa.Super. at 72, 418 A.2d at 616–17.

In *Pashak v. Barish,* 303 Pa.Super. 559, 561, 450 A.2d 67, 68 (1982),[9] the superior court again emphasized that proof of actual loss in a legal malpractice action is not satisfied by evidence of remote or speculative harm. *Id.* In attempting to eliminate any confusion over what was meant by speculative harm, the *Pashak* court stated that, "whether damages are remote or speculative has nothing to do with difficulty in calculating the amount, but deals with the more basic question of whether there are identifiable damages." *Id;* at 561, 450 A.2d at 69 (quoting R. Mallen & V. Levitt, *Legal Malpractice* § 302 (2d ed. 1981)).

In *Mariscotti v. Tinari,* 335 Pa.Super. 599, 601, 485 A.2d 56, 57 (1984), the superior court adhered to the position taken in *Schenkel, Duke & Co.* and *Pashak.* That is, under either assumpsit or trespass, so long as the action is based on legal malpractice, an essential element of the cause of action is proof of actual loss. *Id.* In *Mariscotti,* plaintiff sued her lawyer for an incorrect valuation of her former husband's personal property. She alleged that her attorney's undervaluation of his stock caused her to lose the opportunity to gain a more favorable property settlement upon dissolution of their marriage. In deciding whether the trial court correctly dismissed plaintiff's cause of action, the superior court looked to whether the fact of damages was speculative. Because she could not produce any evidence other than her own opinion that she would have actually recovered more money in the underlying settlement, the court ruled that summary

**9.** In *Pashak,* plaintiff was a third party to the attorney-client relationship. *Id.* at 561, 450 A.2d at 68. She sought damages for the loss of her husband's statutory compensation benefits to which she would have been entitled upon his death. *Id.* at 560, 450 A.2d at 68. Because her husband's attorney settled his claim for a sum certain in exchange for his vested compensation benefits. *Id.* Since the Pennsylvania Supreme Court has now indicated that third-party plaintiffs in a malpractice case must sue under contract principles, the precedential value of this case may be drawn in question. *See Guy, supra,* 501 Pa. at 57, 459 A.2d at 748. However, to the extent *Duke & Co.* and *Pashak* elaborate on an element of the tort cause of action, *e.g.,* actual damages, I do not see any reason to ignore their commentary on that issue.

judgment was appropriate. *Id.*, at 602, 485 A.2d at 58.

The courts of Pennsylvania have made it clear that an attorney should be accountable for the exercise of care in all his professional undertakings, including trial conduct. It is for this reason that the superior court recognized the legal malpractice cause of action.

The intermediate appellate courts of Pennsylvania have uniformly adopted the elements of a legal malpractice action, as set forth in *Schenkel,* whether in contract or tort. The tripartite burden of proof set forth in *Schenkel* is merely a restatement of the traditional elements of a plaintiff's prima facie case in negligence: duty, breach, causation and damages. *Bowman v. Ambramson,* 545 F.Supp. 227, 229 (E.D. Pa.1982). *See also Moorehead v. Miller,* 102 F.R.D. 834, 838 (D.V.I.1984) (survey of state law). This is a plausible and workable standard in the legal malpractice context. To apply negligence principles to a cause of action which sounds in tort is surely not a revolutionary concept.

With respect to plaintiff's argument that he need not demonstrate actual harm in order to state a claim for legal malpractice, I disagree. The requirement that a legal malpractice plaintiff prove some actual loss resulting from defendant's conduct is an essential element of any negligence action in Pennsylvania. *See, e.g., Troutman v. Tabb,* 285 Pa.Super. 353, 359, 427 A.2d 673, 677 (1981). Although it may impose a particular hardship on a malpractice plaintiff to show that he would have prevailed in the underlying action in order to establish actual damages, *see Williams, supra,* 457 F.Supp. at 326 n. 1 (citing Note, *The Standard of Proof of Causation in Legal Malpractice Cases,* 63 Cornell L.Rev. 666, 670 (1978)), the potential problems facing attorneys in the absence of such a rule would seem more monumental. *See Duke & Co., supra,* 275 Pa.Super. at 72, 418 A.2d at 616–17. Thus, this court is confident that the Pennsylvania Supreme Court would adopt the reasoning of *Schenkel* and its progeny. Accordingly, for Gans to state a

cause of action for attorney negligence, he must show duty, breach, causation and proof of actual injury. To prove actual injury, plaintiff must demonstrate that he would have prevailed in the underlying action in the absence of defendant's alleged negligence.

Since the issues for my review are presented in the context of a motion for summary judgment, defendant must establish that no genuine issue exists as to any of the material facts in the case, and that he is entitled to judgment as a matter of law. *See, e.g., Hollinger v. Wagner Mining Equipment Co.,* 667 F.2d 402, 405 (3d Cir.1981). In deciding this motion, this court may examine the pleadings and any other evidential source available in the record. *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). All inferences drawn from the facts presented in these evidential sources must be viewed in a light most favorable to the non-moving party and any doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party. *See, e.g., id.*

Despite these presumptions in favor of the non-moving party, it must be kept in mind that the purpose of Fed.R.Civ.P. 56 is to eliminate the needless delay and expense to the parties and court occasioned by an unnecessary trial. *Id.* Under Rule 56(e) of the Fed.R.Civ.P., a party resisting the motion cannot rely upon bare assertions, conclusory allegations or suspicions. *Fireman's Ins. Co. of Newark, N.J. v. DuFresne,* 676 F.2d 965, 969 (3d Cir.1982). Rather, by affidavit or otherwise, specific facts demonstrating a genuinely disputed factual issue must be set forth. *Id.* Supporting affidavits, whether for the movant or non-movant, must set forth facts rather than opinions. *Maldonado v. Ramirez,* 757 F.2d 48, 51 (3d Cir.1985); *Hurd v. Williams,* 755 F.2d 306, 308 (3d Cir.1985). Essentially conclusory affidavits lacking specific facts are inadequate to satisfy movant's burden. *Maldonado, supra,* at 51. Affidavits must be based on personal

knowledge and contain facts that would be admissible in evidence. *Id.*

I will now examine plaintiff's claims of negligence in the preparation for trial, presentation at trial, and preparation after trial in light of the legal principles which bind this court.

### a. Pretrial Conduct

Plaintiff alleges that Gray committed two pretrial errors: 1) he failed to add SEPTA as a defendant and 2) he failed to make any pretrial motions which may have resulted in a favorable result for plaintiff.

■ Plaintiff's counsel concedes that plaintiff has no cause of action against Gray for his failure to assert a claim against SEPTA. Pl's Mem. in Opp. to Def. Mot. for Sum. Judg. at 15. The accident involving Gans, AMTRAK and SEPTA occurred on October 27, 1977. *See* Exh. B to Def's Mot. for Sum. Judg. at ¶ 3. Gray was not retained as counsel for Gans until November 29, 1979. *See* Exh. A to Def's Mot. for Sum. Judg. Therefore, any potential cause of action against SEPTA was time-barred by the appropriate two-year statute of limitations before Gray was retained by Gans. 42 Pa.Cons.Stat.Ann. § 5524 (Purdon's 1982).

As to the second alleged pretrial error, plaintiff has failed to specify the kind of pretrial action that defendant might have taken in order to have gained a judgment in his favor. The only dispositive pretrial motion which might have been filed by plaintiff's counsel was pursuant to Fed.R. Civ.P. 56. Again, a motion under this rule cannot be granted where a genuine issue exists as to a material fact. Although plaintiff's counsel never states that such a motion would have been successful, he does refer to certain documents and conversations which would have established AMTRAK's liability.

■ Initially, plaintiff directs this court to one of AMTRAK's responses to interrogatories allegedly propounded in the underlying action. In this response, defendant admits that there was contact between the AMTRAK and SEPTA buses. The actual response to plaintiff's interrogatory was not placed in evidence and, hence, cannot be considered by this court. *Abraham v. Pekarski*, 537 F.Supp. 858, 861 n. 1 (E.D. Pa.1982) *aff'd in part and app dism'd in part*, 728 F.2d 167 (3d Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 3513, 82 L.Ed.2d 822 (1984). However, even assuming that these statements concerning the document, or the document itself, were admissible, AMTRAK's alleged response is not tantamount to an admission of liability. The fact of rear-end contact between the vehicles does not establish liability.

■ Plaintiff's memorandum also contains certain factual assertions concerning alleged pretrial settlement negotiations between Gray, an AMTRAK claims agent, and an AMTRAK lawyer. These statements made in counsel's brief are not evidence. Without the submission of sworn statements to the parties to these conversations any admission contained therein cannot be considered in deciding this motion. *See, e.g., Proctor v. Sagamore Big Game Club*, 265 F.2d 196, 199 (3d Cir.), *cert. denied*, 361 U.S. 831, 80 S.Ct. 81, 4 L.Ed.2d 73 (1959); *Goodway Marketing, Inc. v. Faulkner Advertising Associates, Inc.*, 545 F.Supp. 263, 268 n. 3 (E.D.Pa.1982); *Sims v. Mack Truck Corp.*, 488 F.Supp. 592, 597 (E.D.Pa.1980).

■ I find that based on the record before me, Gray's pretrial conduct was reasonable as a matter of law. There is no indication in the record that Gray failed to exercise the requisite level of care in preparing for trial of the underlying action. Plaintiff has failed to provide any admissible evidence to buttress his argument that a pretrial motion for summary judgment was warranted. *Maldonado*, 757 F.2d at 51. Although I am hesitant to speculate on what information might have been contained in such a motion or to conjecture as to how Senior Judge Davis would have ruled on such a motion, the pretrial evidence in this case seems clear. Gans' complaint alleged sole negligence on the part of AMTRAK. *See* Exh. B to Def's Mot. for Sum. Judg. at ¶ 5. On the other hand, the

AMTRAK bus driver testified at his deposition that the accident was caused by the SEPTA bus. *See* Exh. 5 to Def's Mot. for Sum. Judg. at 27. Thus, defendant could have used this testimony to thwart any summary judgment motion filed by plaintiff. Under these circumstances, the issue of negligence was disputed. The question of whose version of the accident is more credible was for the fact-finder and not the judge. Accordingly, without admissible evidence to support plaintiff's claim, plaintiff has failed to show that any pretrial motion would have been dispositive and successfully asserted.

### B. *Trial Conduct*

During the course of the trial, plaintiff alleges that Gray made four material omissions which constitute malfeasance: 1) Gray's failure to secure a full and complete record of the court's ruling on AMTRAK's motion for a directed verdict, a motion which plaintiff believes may have adversely affected the court's view of liability; 2) Gray's inability to have certain witnesses testify on plaintiff's behalf; 3) Gray's refusal to allow plaintiff to rebut certain testimony presented by defendants and 4) Gray's failure to prevent or to object to the trial court's instruction to the jury on the "sudden emergency doctrine."

This court has strained to find some legal significance in plaintiff's first allegation of trial misconduct. If viewed as one assertion, the chain of causation suggested by this allegation is preposterous. Therefore, this court will view this allegation as containing two distinct assertions: 1) AMTRAK's motion under Fed.R.Civ.P. 50 may have adversely affected the trial court's view of liability and 2) Gans has been somehow prejudiced by defendant's failure to provide a transcript of the court's bench ruling disposing of this motion.

The first assertion is pure conjecture unsupported by any probative evidence. It is the paradigm of an improper response to a motion under Fed.R.Civ.P. 56. *See, e.g., Carey v. Beans,* 500 F.Supp. 580, 583 (E.D.Pa.1980), *aff'd,* 659 F.2d 1065

(3d Cir.1981). Moreover, plaintiff is in actuality impugning the judicial conduct of the trial court. Any conduct on the part of Gray should not have affected the court's view towards liability in composing the jury instructions. Senior Judge Davis is not a defendant in this lawsuit.

Plaintiff's second assertion is also patently frivolous. AMTRAK's motion for a directed verdict was denied. The issue of liability was submitted to the jury for disposition. *See* Exh. A to Def's Mot. for Sum. Judg. at 3. Plaintiff has failed to show how Gray's failure has caused him any damage under the requirement set forth in *Duke & Co.,* 275 Pa.Super. at 71, 418 A.2d at 618. Since AMTRAK's motion was denied, there is no reason why a transcript of the court's ruling on this motion would have aided Gans' attempted success in the underlying action.

The second basis for plaintiff's assertion of trial misconduct is not an assertion of specific fact such that it would be admissible as evidence. Plaintiff's memorandum fails to identify any witnesses who would have been called to testify nor does it state what that testimony would have been. To support plaintiff's assertion, his own affidavit has been submitted. Gans states, "In the course of trial, Mr. Gray was not able to have certain witnesses testify on my behalf." *See* Exh. A to Pl's Mem. in Opp. to Def's Mot. for Sum. Judg. at ¶ 7. This sworn statement does not indicate that these witnesses were available, that they possessed relevant, material evidence or even whether it was the court that refused to allow Gray to call the unidentified witnesses. There is nothing in this conclusory allegation to demonstrate either unreasonable conduct by Gray or that such alleged omissions would have likely enabled plaintiff to prevail in the underlying action.

As was true with Gans' second basis for trial misconduct, his third is equally speculative. Gans' affidavit does not set forth the specific testimony presented by AMTRAK that he wished to rebut. *See id.* at ¶ 10. Moreover, he fails to state what evidence he wished to present in his defense.

This allegation is so amorphous that one does not know whose testimony or what document Gans wished to use on rebuttal. This conclusory allegation is far below that level of evidence which would be necessary to withstand a motion for summary judgment.

■ Finally, plaintiff appears to allege that Gray erred in failing to prevent or object to the trial court's jury charge on the sudden emergency doctrine. Plaintiff has presented no factual support for such an allegation. It cannot be discerned from this record whether or not Gray objected to the jury charge. However, resolving any doubt in favor of the non-moving party, I will assume that defendant made no objection. The heart of any allegation of unreasonable conduct by defendant is the propriety of the instruction itself. For if the instruction was warranted, counsel's failure to object was reasonable.

In examining the record, I find that there was ample evidence to support Senior Judge Davis' instruction on the sudden emergency doctrine. Lloyd Holmes, the driver of the AMTRAK bus, testified pretrial that prior to impact, the AMTRAK bus was stopped behind the SEPTA bus at a red light. When the light turned green, the SEPTA bus moved forward. The AMTRAK bus followed. Holmes testified that, suddenly, the SEPTA bus stopped "on the dime with no indication of brake lights or no indication of a turn signal" and attempted a left-hand turn. *See* Exh. 5 to Def's Mot. for Sum. Judg. at 12. Holmes was unable to prevent the bus from hitting the SEPTA bus on the wet pavement. It is not disputed that Holmes' trial testimony conformed substantially to his pretrial deposition. *Compare* Exh. C to Def's Mot. for Sum. Judg. at ¶ 14 *with* Exh. 5 to Def's Mot. for Sum. Judg.

This Circuit, applying Pennsylvania law, has recognized that, if a sudden emergency confronts an individual, he should not be held accountable for failing to reflect carefully on the course of action to be taken. *Sowizral v. Hughes*, 333 F.2d 829, 835–36 (3d Cir.1964). As a consequence of being placed in an emergency situation through no part of his own, the Third Circuit has held that negligence on the part of the actor faced with the emergency *cannot* be implied. *Id.* at 836 (citing, *e.g.*, *Liuzzo v. McKay*, 396 Pa. 183, 186–87, 152 A.2d 265, 267–68 (1959)). In the underlying action, it was not unreasonable to instruct the the jury on the sudden emergency doctrine. There was evidence that the lack of proper functioning signal devices on the SEPTA bus when combined with sudden stop of the SEPTA bus and the presence of wet pavement, left the AMTRAK driver in a helpless position. Whether Holmes' statement was credible was for the jury. Therefore, as a matter of law, I conclude that Gray's failure to object to this portion of jury charge was not unreasonable.

### C. *Post-Trial Conduct*

Plaintiff's final contentions concern three alleged post-trial errors: 1) defendant negligently failed to comply with the local rules of civil procedure causing plaintiff's motion for a new trial to be disallowed and the underlying action to be dismissed; 2) defendant negligently failed to appeal from Senior Judge Davis' order dismissing the underlying action for lack of prosecution and 3) defendant negligently failed to take an appeal from the jury verdict in favor of AMTRAK. While these are three separate bases for legal malpractice, in the context of this decision, they each involve resolution of the same legal issue.

It is defendant's contention that his post-trial conduct, even if it rises to the level of unreasonable conduct, did not result in any injury to plaintiff. Defendant argues that it is plaintiff's burden under the decisional law of Pennsylvania to show actual damages. To meet this burden, defendant believes that plaintiff must produce evidence that, had the motion for new trial or appeals from the trial court's decisions been considered on the merits, he would have been successful in gaining a decision in his favor. Under defendant's theory, the success of each of plaintiff's three assertions can be reduced to the penultimate question: was plaintiff entitled to a new trial because

the jury verdict was against the weight of the evidence?[10] Gray contends that, when read in a light most favorable to defendant, there was sufficient evidence in the record to support the jury verdict.

Defendant has submitted evidence containing specific facts which indicate that a motion for a new trial should be granted. Plaintiff, on the other hand, again relies on conclusory allegations to support his position. Gans contends that he clearly established AMTRAK's liability in the underlying action. Plaintiff submits that the fact of the rear-end accident must give rise to a conclusive presumption of liability on the part of the driver of the rear-ending vehicle.[11] Therefore, he believes that he was entitled to judgment in his favor.

The legal standard to be applied in evaluating the merits of plaintiff's allegations of post-trial error is clear under the reasoning of *Duke & Co.*, 275 Pa.Super. at 71, 418 A.2d at 618. In order to succeed in this legal malpractice action, plaintiff must show that Gray's conduct was unreasonable and must demonstrate proof of actual damages resulting from such unreasonable conduct. Defendant's 165-day delay in complying with the local rules may be *prima facie* evidence of egregious conduct. At no point in his briefs or affidavit did defendant attempt to justify his failure to be aware of or to adhere to the local rules. However, assuming *arguendo* that defendant's conduct was negligent, plaintiff must

still demonstrate that he would have succeeded in the underlying action, but for such omission.

Because it is plaintiff's burden to show that he would have been successful in the underlying action, I agree with defendant's position that the ultimate question is whether plaintiff has submitted sufficient proof to withstand summary judgment on the issue of whether he would have succeeded on the merits of the motion for a new trial.[12]

The standard of review on a motion for a new trial was correctly stated by Senior Judge Davis in the underlying action. This court may only grant a new trial where the verdict is against the weight of the evidence, is excessive, or where errors in rulings on the charge warrant it. *See, e.g., Denneny v. Siegel*, 407 F.2d 433, 439 (3d Cir.1969). Gans' argument in this action is identical to the argument presented by him, through Gray, in his motion for a new trial in the underlying action. *Compare* Pl's Mem. in Op. to Def's Mot. for Sum. Judg. at 14–15 *with id.* at Exh. B. Because the SEPTA bus struck the AMTRAK bus in the rear, plaintiff argues that he was entitled to recover. This argument, although appealing on its face, is illusory upon further examination. Plaintiff ignores all other testimony and evidence in the record which rationally points to the absence of liability. Plaintiff

10. Defendant argues that even if a reviewing court were to rule in favor of plaintiff on the issue of whether Senior Judge Davis committed legal error in dismissing the action for lack of prosecution, it would either have to decide whether a new trial was warranted or allow the trial court to make that decision on remand. Thus, under any of plaintiff's three assertions, a reviewing court would have to decide whether the jury verdict was against the weight of the evidence.

11. Plaintiff also asserts that he is entitled to judgment in his favor in the underlying action because a plaintiff's burden of proof in a FELA case is less than in an ordinary negligence case. I need not address the issue. Plaintiff has failed to demonstrate any nexus between the legal standard and defendant's conduct. Although plaintiff has provided a copy of the charge on

the burden of proof in a FELA action, *see* Exh. D to Pl's Mem. in Op. to Def's Mot. for Sum. Judg., he fails to challenge the jury charge as being erroneous. Furthermore, he does not point to the commission of any trial error by Gray which might have led to an unfavorable decision in the underlying action.

12. The instant action involves a challenge to attorney conduct following the submission of the liability issue to the jury. The challenged conduct consists of a post-trial, procedural error. It would be unreasonable under these circumstances to demand proof of success on the merits in the underlying action. The more appropriate standard would be to have the plaintiff present evidence that he would have succeeded on a motion for a new trial. To the extent that a plaintiff is deprived of the right to a trial *de novo*, he certainly is damaged.

refuses to accept the viability of the sudden emergency doctrine. The driver of the bus claimed that the SEPTA bus' turn signal lights failed to function. *See* Exh. 5 to Def's Mot. for Sum. Judg. at 27. This testimony was, in fact, affirmed by plaintiff's own affidavit submitted in another case. *See id.* at Exh. 4, ¶ 9. This sworn testimony attests to plaintiff's own belief that there were sufficient facts from which a jury could have concluded that liability attached to SEPTA for any injury sustained by plaintiff.

The failure of the SEPTA bus to have functioning rear lights and the wet condition of the streets, led Senior Judge Davis to instruct the jury on the sudden emergency doctrine. As previously stated, this instruction was warranted. It was consistent with the evidence and the law that the jury concluded that the AMTRAK driver, due to no negligence on his part, had insufficient time to react to the emergency situation created by SEPTA's lack of due care. This court cannot substitute its judgment for that of the jury merely because plaintiff believes a different result may have been reached by other fact-finders. *Ernst v. Ace Motor Sales, Inc.*, 550 F.Supp. 1220, 1222 (E.D.Pa.1982) (Giles, J.), *aff'd*, 720 F.2d 661 (3d Cir.1983).

Because plaintiff has advanced no new evidence in support of its theory that he was entitled to a new trial, the case is essentially in the same posture it was when it was last before Senior Judge Davis.[13] While not controlling, the court's opinion on the merits of the motion for a new trial is at least persuasive. I agree with plaintiff that the trial court's opinion on the merits is dictum. However, Senior Judge Davis took patience in addressing this issue when he need not have done so. His candor indicates that he strongly believed that plaintiff's motion would have been denied

irrespective of defendant's failure to prosecute in accordance with the local rules.

He concluded that plaintiff, in his argument for a new trial, had failed to take into account evidence concerning material facts which, if believed, could have led the jury to find in favor of AMTRAK. Specifically, the trial court pointed to the speed of the AMTRAK bus immediately prior to impact, the distance which the bus might have slid immediately prior to the collision and finally, the condition of the rear lights on the SEPTA bus. Because of conflicting testimony, the court felt that the jury could have determined that plaintiff had failed to establish defendant's negligence. In drawing this conclusion, the court referred to the appropriate standard of review. In reviewing a motion for a new trial, a court is obliged to view the evidence in a light most favorable to the prevailing party and draw every reasonable and fair inference therefrom which supports the verdict. *See, e.g., Vizzini v. Ford Motor Co.*, 569 F.2d 754, 757–58 (3d Cir.1977). Because there was a variance in the testimony as to the facts of the accident, this court must make inferences favorable to Gray's position. To act in a contrary fashion is to undercut the principles undergirding the jury system.

A review of the record reveals other testimony which supports the jury verdict in the underlying action. First, the two witnesses whose testimony supported a finding of negligence on the part of AMTRAK, Timothy Brown and Michael Akers, both had a personal stake in giving a favorable rendition of the accident. Both had pending lawsuits against AMTRAK arising out of the same incident. *See* Exh. F to Def's Mot. for Sum. Judg. at 16; Exh. G to *id.* at 6. Furthermore, Brown's rendition of the facts differed widely from that of Akers. *See* Exh. G to Def's Mot. for Sum. Judg. at 6. Their only agreement was on the fact of

---

**13.** There is, however, one exception. A complete transcript of trial testimony was filed with the clerk of court on May 6, 1980. *See* Exh. 4 to Def's Mot. for Sum. Judg. at 3. Although Judge Davis dismissed plaintiff's cause of action for failure to file a transcript with its motion for a new trial, the transcript was nevertheless available to the parties in this case. Plaintiff, however, has failed to supplement the record with any reference to these transcripts which might have changed Judge Davis' provisional ruling on the merits of plaintiff's motion for a new trial in the underlying action.

rear-end impact. As stated above, this fact alone is insufficient to trigger a presumption of AMTRAK's negligence.

Finally, there are many discrepancies in the record which cast doubt on the severity of the accident. For example, Akers testified that the bus driver stopped at McDonald's right after the accident. Exh. G to Def's Mot. for Sum. Judg. at 5. On the other hand, Holmes testified that he stopped at McDonald's at the request of his passengers. Exh. C to *id.* at 33–34. Further, Holmes was to testify that there was no damage to either vehicle. *See id.* at 25. To choose between differing versions of the accident or post-accident event was a function for the jury. These discrepancies must now be viewed in a light most favorable to Gray. Therefore, the jury's finding that AMTRAK acted reasonably under the sudden emergency situation created by SEPTA's negligence is supported by the record evidence.

 Defendant has presented sufficient evidence that the issue as to post-trial conduct can be decided on motion for summary judgment. Plaintiff has failed to submit affirmative evidence under Fed.R. Civ.P. 56(e) to create a genuine issue of material fact for a fact-finder. There is no evidence, and specifically, no affidavit of expert opinion, that defendant's pretrial or trial conduct was unreasonable. Further, as to post-trial conduct, reasonable minds cannot deny that the record supports the jury verdict in favor of AMTRAK. Despite defendant's negligent failure to comply with the local rules of procedure, plaintiff nevertheless would not have been successful on the merits. Under the law of the forum, speculative injury is not sufficient to cause this court to allow a case to go to the jury. A plaintiff should not now be allowed to challenge the propriety of the jury's verdict unless he can adduce sufficient proof that he was entitled to a new trial. To allow a plaintiff to bring a legal malpractice action against his attorney merely because he obtained an unfavorable jury verdict would seriously impair the functioning of the judicial system. A plaintiff must have a legitimate challenge to unreasonable attorney conduct which causes an unfavorable result. These essential elements have not been established here as a matter of law.

Accordingly, defendant's motion for summary judgment is GRANTED.